NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0602n.06

No. 09-1510

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Sep 10, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| ARNOLD CECIL PURIFOY, | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendant-Appellant. | ) | |

Before: GIBBONS and KETHLEDGE, Circuit Judges; SARGUS, District Judge.[*]

**SARGUS, District Judge.** Defendant-Appellant Arnold Purifoy ("Purifoy") appeals the decision of the District Court denying his motion to suppress evidence discovered during a search of his condominium. Purifoy contends that evidence adduced at his suppression hearing established that a DEA agent used recklessly or knowingly false information in an affidavit supporting the application for the warrant to search the condominium. Purifoy further contends that if such information were removed from the affidavit pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), the remaining information would not have sufficed to establish probable cause that evidence of criminal activity would be found at the condominium. For the reasons that follow, we **AFFIRM** the decision of the District Court denying Purifoy's motion to suppress evidence.

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

# I. BACKGROUND

On April 24, 2008, agents of the Drug Enforcement Administration ("DEA") executed a search warrant at a condominium associated with Purifoy located on Alexa Drive in Commerce Township, Michigan. Prior to the execution of the search warrant, DEA agents had been investigating Purifoy as the suspected leader of a cocaine trafficking organization. During the search of the condominium, the agents discovered just under 500 grams of cocaine and various firearms, including an assault rifle with a one-hundred-round ammunition drum. The assault rifle was found in the same bedroom closet as the cocaine, which was stored in a safe.

Purifoy was subsequently indicted for possessing a firearm after having previously been convicted of a felony in violation of 18 U.S.C. § 922(g)(1), possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a), and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Purifoy moved to suppress the evidence found in the condominium on the grounds that the affidavit used to obtain the search warrant contained insufficient information to establish probable cause or on the alternative ground that the affidavit contained information that the DEA agent knew was false, or for which the agent exhibited a reckless disregard for the truth.

DEA Task Force Agent Patrick DeBottis ("DeBottis") submitted the affidavit. In the affidavit, DeBottis averred that he had twenty-two years of experience as a police officer with over five years working for the DEA. In a section of the affidavit labeled "Investigative Background," DeBottis detailed why the DEA suspected that evidence of illegal drug activity would be found at the condominium located on Alexa Drive. In paragraph 9, DeBottis indicated that during 2008, he had interviewed three confidential sources, identified as "DEA-1," "DEA-2," and "DEA-3," who

stated that the condominium located on Alexa Drive was a drug stash and distribution center for Purifoy's illegal drug operation. The three confidential sources all stated that they observed consistent, short-term vehicular activity at the condominium late at night. According to DeBottis, such short term vehicular traffic can be indicative of illegal drug operations. DeBottis averred that information provided to himself and other DEA agents by the three confidential sources was verified and deemed reliable. DeBottis further averred that DEA-3 had received specific training related to narcotics investigations.

In paragraph 10, DeBottis indicated that he had identified Purifoy, and that the three confidential sources all confirmed Purifoy's identity upon being shown a photograph of Purifoy. In the remainder of paragraph 10, DeBottis listed Purifoy's many previous arrests, including several arrests for drug-related offenses, and indicated that Purifoy had an outstanding arrest warrant for the delivery and manufacture of cocaine. Paragraph 11 of the affidavit indicated that agents had observed an individual identified as Angela Withenshaw ("Withenshaw") frequently leaving and entering the condominium, a sign that she was a possible drug courier. Withenshaw had previous arrests for possession of cocaine, and her identity was confirmed by the confidential sources upon being shown her photograph by DEA agents.

In paragraph 12 of the affidavit, DeBottis described observation of another possible drug courier associated with the condominium as follows:

> Agents on numerous occasions observed a 1992 Chevrolet four-door vehicle bearing Michigan registration BTN2782 at [] Alexa Drive. The occupant was observed in and out of the residence located at [] Alexa Drive on a regular basis. This was confirmed by DEA-1, DEA-2, and DEA-3. Affiant identified the driver of the 1992 Chevrolet as Edward Frowner, black male, DOB: []-1952. DEA-1, DEA-2, and DEA-3 identified Frowner as a person who frequents [] Alexa Drive. DEA-1, DEA

-2, and DEA-3 identified Frowner by a photograph provided by agents. An inquiry of Edward Frowner's criminal history revealed Frowner had previous arrests . . . .

In the remainder of paragraph 12, DeBottis listed approximately fifteen prior arrests for Edward Frowner ("Frowner"), each of which appears to be drug-related.

In paragraph 13 of the affidavit, DeBottis detailed four vehicles that were utilized by Purifoy—a 2000 Cadillac Deville registered to "Sweet Creations LLC" at the Alexa Drive condominium; a 2000 Volvo registered to "Ideal Candy CO LLC" [sic] at the Alexa Drive condominium; a 1997 Buick also registered to Ideal Candy Co.; and a 2002 Chevrolet Impala registered to Melissa Kaye Smith, who was believed to be a "nominee" owner of the vehicle. According to DeBottis, DEA agents had observed Purifoy driving the 2002 Chevrolet Impala on several occasions, and observed Purifoy utilizing the condominium "on a regular basis both day and night."

In paragraph 14 of the affidavit, DeBottis averred that a search through public and law enforcement databases indicated that the condominium was purchased and owned by "Melvin C. Purifoy" and that Melvin C. Purifoy was an alias of Purifoy. According to DeBottis, a check of public databases also indicated that Melvin C. Purifoy was the registered owner of the 2000 Cadillac Deville. In paragraph 15, DeBottis indicated that DEA-1 and DEA-2 provided information that Purifoy bragged about changing his identity, had stated that he had burned off his fingerprints to prevent law enforcement officers from discovering his true identity, and that he became enraged when an individual called him by his true name. According to DeBottis, through his training and experience, he was aware that drug-traffickers use aliases and nominee owners of assets to avoid detection by law enforcement officers.

Finally, in paragraph 16, DeBottis averred that on April 20, 2008, he and other DEA agents searched a large trash container abandoned near the condominium and recovered numerous plastic bags with cut corners, one of which contained cocaine residue, a proof of residency for "MC Purifoy" at the condominium's address, a piece of paper containing large numbers, a broken crack pipe, and "Chore boy" copper screens, which can be used to smoke crack cocaine. According to DeBottis, based on his experience, cocaine traffickers typically use plastic bags of the type discovered to package cocaine for delivery.

The District Court held an evidentiary hearing on Purifoy's motion to suppress on September 4 and 11, 2008. In the record and on appeal, Purifoy has characterized this hearing as a *Franks* hearing. However, as explained below, it is apparent that the District Court did not consider the proceedings to be a *Franks* hearing. Among other issues, the hearing focused on paragraphs 11 and 12 of the affidavit and included testimony from DeBottis, Withenshaw, Frowner, David Arafat ("Arafat"), and DEA Agent Ted Dosch. Withenshaw stated that she was Purifoy's girlfriend. She denied being a drug courier, but admitted that she had been living at the condominium at the time the search warrant was executed. According to Withenshaw, Purifoy had been helping her kick drug addictions as she was preparing to turn herself in to the authorities for probation violations.

From the testimony of Arafat and Frowner, it became apparent that DeBottis had misidentified the black male described in paragraph 12 as Frowner. Arafat testified that he lived near the condominium associated with Purifoy and that, in February 2008, he had purchased from Frowner the 1992 Chevrolet referred to in paragraph 12. According to Arafat, the 1992 Chevrolet did not run properly and he left it parked in various locations throughout the condominium complex where he lived. He never changed the title from Frowner's name to his own before eventually selling

it to a junkyard. Arafat denied that Frowner had ever visited his home. Frowner corroborated Arafat's story that Frowner had sold to Arafat the 1992 Chevrolet at Arafat's place of employment, a liquor store. Frowner denied ever meeting Purifoy or ever having been in Commerce Township. Frowner did, however, confirm that he had several prior drug convictions in California. Frowner is a black male and testified that he shaved his head and usually wore a beard.

DeBottis confirmed that Frowner was not the individual whom was described in paragraph 12 of the affidavit as a possible drug courier. According to DeBottis, a check of license plate records indicated that the white Chevrolet parked near the condominium was registered to Frowner. Based on this information, DeBottis was able to obtain Frowner's photograph and concluded that a black male who was seen near the 1992 Chevrolet talking to Purifoy was Frowner because the man, who was also bald, resembled Frowner. DeBottis admitted that the man he thought was Frowner was of a significantly larger build than Frowner and did not have a beard. However, there is some indication in the record that the photograph of Frowner obtained by DeBottis did not depict Frowner wearing a beard. ("Q. Okay. Now, you would agree, would you not, that that photograph does not resemble in the sense that it doesn't have - - Mr. Frowner in that particular photograph does not have a beard? A. That is correct."). DeBottis also admitted that despite specific averments in the affidavit, the black male he observed was never actually seen occupying or driving the 1992 Chevrolet. DeBottis did testify, however, that the three confidential sources all believed that the man seen frequenting the condominium was Frowner after being shown Frowner's picture.

The District Court denied Purifoy's motion to suppress evidence in an opinion issued on October 24, 2008. Of relevance to the instant appeal, the Court held that, when viewed in totality, the facts presented in the affidavit, including "the informants' statements, the affiant's experience,

the results of the agents' investigation, and the contents of the trash container," supported a finding of probable cause by the magistrate judge. The Court went on to note that, while the information that Frowner was the individual seen near the condominium on several occasions was apparently false, Purifoy failed to provide evidence that DeBottis recklessly or intentionally included the false information in the affidavit. According to the District Court, the misidentification of Frowner "was a plausible mistake, not reckless behavior." The Court further found that Withenshaw's testimony that she was not a drug courier and merely lived at the condominium was inconsequential to DeBottis's state of mind in identifying her as a possible drug courier. Finally, the Court held that, even if the information in paragraphs 11 and 12 of the affidavit were removed, the remaining information would still have supported a finding of probable cause by the magistrate judge. In this regard, the District Court noted that the remaining information would include that supplied by the confidential sources, the information about Purifoy's use of aliases, and, most significantly, the results of the trash pull.

As explained above, Purifoy has described the evidentiary hearing held by the District Court as a *Franks* hearing. However, in examining the District Court's decision, it is apparent that the Court analyzed the evidence presented at the hearing under the standard that a defendant must meet *before* a hearing challenging the sufficiency of an affidavit can be awarded pursuant to *Franks* ("If a defendant requests an evidentiary hearing to challenge the veracity of an underlying affidavit, he must meet the requirements established by the United States Supreme Court in *Franks v. Delaware*, 438 U.S. 154 (1978). . . . A so-called *Franks* hearing will be granted only if . . . two conditions are met . . . ."; "Defendant has not met his burden under *Franks*."). Thus, the District Court did not view the evidentiary hearing as a *Franks* hearing.

After the District Court denied his motion to suppress, Purifoy agreed to conditionally plead guilty to the counts against him. The District Court subsequently sentenced him to a term of 262 months in prison.

## II.  STANDARD OF REVIEW

We review the denial by the District Court of a *Franks* hearing and the denial of a motion to suppress evidence under the same standard. *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001). The District Court's conclusions of fact are reviewed for clear error and its conclusions of law are reviewed de novo. *Id.*

## III.  DISCUSSION

The Fourth Amendment to the Constitution of the United States provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. In cases where officers of the government violate the Fourth Amendment rights of individuals in conducting searches or seizures, the government may be prohibited from using evidence obtained during such illegal searches or seizures against those whose rights have been violated. *See generally Mapp v. Ohio*, 367 U.S. 643 (1961).

Purifoy asserts that under the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978), the evidence found during the search of the condominium on Alexa Drive should be suppressed. In *Franks*, the Supreme Court held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155-56. Thus, under *Franks*, a defendant is entitled to a hearing challenging "the sufficiency of an executed search warrant" if "(1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false *and* (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side." *United States v. Atkin*, 107 F.3d 1213, 1216-17 (6th Cir. 1997)(quoting *United States v. Campbell*, 878 F.2d 170, 171 (6th Cir. 1989))(emphasis in original).

On appeal, Purifoy contends that the District Court erred in concluding that he had failed to provide evidence that DeBottis had knowingly or recklessly included false information in the affidavit, and in concluding that if the information at issue were removed from the affidavit, probable cause to search the condominium would still have been established. We agree with the District Court's conclusion that Purifoy has produced no evidence that statements in the affidavit were recklessly or knowingly false. We further agree with the District Court that, even if the allegedly false statements, and indeed all of paragraph 12, were excised from the affidavit, the remaining information would still support a finding of probable cause by the magistrate. Accordingly, we affirm the District Court's denial of Purifoy's motion to suppress.

## A. Recklessly False or Knowingly False Information

Purifoy asserts that three factual averments made by DeBottis in paragraph 12 of the affidavit were recklessly made or knowingly false. These averments include (1) that an individual who was a possible drug courier for Purifoy was identified as Edward Frowner, a man with many previous drug arrests; (2) that this man was observed "in and out" of the condominium on a regular basis, and (3) that the man was observed driving or occupying the 1992 Chevrolet parked near the condominium.

From the evidence adduced at the suppression hearing, Purifoy was able to establish that the black male seen near the condominium was not Frowner. However, Purifoy was not able to produce evidence suggesting that DeBottis's identification as the man as Frowner was reckless or knowingly false. To the contrary, the evidence suggests that the misidentification was nothing more than a reasonable mistake. For instance, the 1992 Chevrolet parked near the condominium was still registered to Frowner because Arafat never titled the car, which he had purchased from Frowner, in his own name. DeBottis testified that he had seen the unidentified black male, who was bald with no beard, near the Chevrolet. Upon running the license plate of the Chevrolet, DeBottis was led to Frowner, a black male who shaves his head, and whose driver's license picture, which was used by DeBottis for identification, apparently did not depict him wearing a beard as he usually did.

DeBottis assumed that the male who resembled Frowner and who was seen standing near a car registered to Frowner was in fact Frowner. Under the circumstances, this was a plausible mistake. A reasonable misidentification cannot be made "recklessly" and a mistake cannot be made "knowingly." Thus, DeBottis's misidentification of the male observed near the condominium was neither reckless nor knowing.

Purifoy next contends that the statement that the unidentified black male "was observed in and out of the residence located at [] Alexa Drive on a regular basis" was knowingly or recklessly false. However, as with the statements concerning the man's identification as Frowner, Purifoy was unable to adduce any evidence supporting this contention. DeBottis testified that he *personally* only observed the man mistakenly identified as Frowner twice—once talking to Purifoy near cars parked outside the condominium and once with Purifoy in the garage area of the condominium (while the garage door was open). Based on this testimony, DeBottis personally did not observe the man "in

-10-

and out of the residence on a regular basis." On its face, however, the statement in question does not reveal who actually observed this male entering and leaving the residence. At the hearing, DeBottis testified that the confidential informants (who apparently also mistakenly identified the man as Frowner) observed the man "in and out of the residence." Aside from proving that this man was not Frowner, Purifoy has not provided evidence that would contradict DeBottis's testimony on this point. Thus, Purifoy has not met his burden under *Franks* in demonstrating that the statement in question is false, let alone that it was made recklessly or knowingly.

Finally, Purifoy asserts that the factual averments indicating that the black male was an occupant or driver of the 1992 Chevrolet were knowingly false. At the hearing, DeBottis testified that he had actually never seen the black male in the 1992 Chevrolet associated with Frowner. ("Q. . . . Did you ever actually see [the black male] in the car? A. No, I didn't."). If DeBottis never actually saw the man in the car, then the statements in paragraph 12 of the affidavit that "[t]he occupant [of the 1992 Chevrolet] was observed in and out of the residence" and [a]ffiant identified the driver of the 1992 Chevrolet as Edward Frowner" were false to the extent they indicate that the unidentified black male was seen driving or occupying the 1992 Chevrolet. Furthermore, there is no evidence in the record that the confidential informants observed the unknown man occupying the car, and, because the car was owned by Arafat and was likely not associated with the unknown man at all, this possibility is unlikely. However, Purifoy has not produced evidence to suggest that any false information was not the result of a simple mistake. Thus, Purifoy did not meet his burden of making a substantial preliminary showing in this regard.

In the end, however, the issue of whether the unidentified man was ever observed driving or occupying the vehicle linked with Frowner is of relatively little consequence to the overall portrait

painted by the affidavit. As discussed below, even if all of the statements contested by Purifoy and indeed all of paragraph 12 of the affidavit were removed, the remaining information would still have been sufficient for a finding of probable cause by the magistrate judge.

## B. Probable Cause from the Remaining Information

In deciding whether an affidavit establishes probable cause justifying the issuance of a search warrant, a magistrate must find that "given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "When determining whether an affidavit establishes probable cause, we look only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). Finally, in reviewing the affidavit, we must show great deference to the probable cause determination of the magistrate, but at the same time "insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006)(quoting *Aguilar v. Texas*, 378 U.S. 108, 111 (1964), *abrogated on other grounds by Gates*, 462 U.S. 213). "When the district court itself is a reviewing court . . . this court owes the district court's conclusions no particular deference." *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996).

Purifoy attempts to characterize paragraph 12, which contains the statements that he alleges were recklessly or knowingly false, as "the most important piece of evidence in the affidavit." To the contrary, the information contained in paragraph 12 is relatively insubstantial compared to other information in the affidavit. If this paragraph were removed, the remaining information would still have been sufficient for a finding of probable cause by the magistrate judge. Among other things,

the remaining information would include: (1) that three confidential sources (one of whom with training in narcotics investigations), whose information was verified and deemed reliable, stated that they believed the condominium was being used by Purifoy to stash and distribute drugs; (2) that the three informants had observed consistent, short-term vehicular traffic outside the condominium on Alexa Drive and that in DeBottis's experience, such short-term traffic was consistent with illegal drug operations; (3) that DeBottis had identified Purifoy, who had a lengthy history of drug-related arrests, using the condominium on a regular basis and that Purifoy's identity had been verified by the confidential sources; (4) that the condominium was owned by "Melvin C. Purifoy," a known alias of Purifoy; (5) that two of the confidential sources reported that Purifoy bragged about changing his identity, stated that he had gone so far as to burn off his fingerprints to stop law enforcement officers from discovering his true identity, and became enraged on an occasion when someone called him by his real name; and (6) that in a trash container on the street next to the condominium, DEA agents discovered numerous plastic bags with cut corners—bags which, in Debottis's experience, were similar to bags used by drug traffickers to package cocaine for delivery—a plastic bag containing cocaine residue, a crack pipe and materials used to smoke crack, and documentation linking the garbage to "MC Purifoy." This information is more than enough for a magistrate to conclude that there was "a fair probability that contraband or evidence of a crime" would be found at the condominium. *Gates*, 462 U.S. at 238.

Purifoy contends that the information provided by the confidential sources should be disregarded in this case because this information was not sufficiently corroborated by the DEA agents. "When confronted with hearsay information from a confidential informant or an anonymous tipster, a court must consider the veracity, reliability, and the basis of knowledge for that information

as part of the totality of the circumstances for evaluating the impact of that information." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). "While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005)(citation omitted)(emphasis in original).

Here, contrary to Purifoy's assertions, there are specific indications in the affidavit of the past reliability of DEA-1 and DEA-2 ("DEA-1 and DEA-2 have provided information to affiant and other Drug Enforcement agents which was verified and deemed reliable"), and ample evidence that information provided by all three confidential informants was corroborated by independent DEA investigations. In this regard, DeBottis expressly stated in paragraph 9 of the affidavit that information provided by the confidential sources during the investigation of Purifoy was confirmed by DEA surveillance, databases, and other law enforcement information. Furthermore and perhaps most significantly, the discovery of plastic bags of a type used in cocaine trafficking, one of which containing cocaine residue, in garbage connected with the condominium provided the most substantial corroboration of all of the confidential informants' statements that the condominium was being used for drug trafficking. *See, e.g., United States v. Martin*, 526 F.3d 926, 937 (6th Cir. 2008) ("The confidential informant's minimal facts here were bolstered when the trash pull yielded cocaine residue.").

## IV. CONCLUSION

For the foregoing reasons, the decision of the District Court denying Purifoy's motion to suppress evidence is **AFFIRMED**.