NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0359n.06

Case Nos. 22-3547/3931

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 07, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| MARCUS CALDWELL, | ) ) | |
| Defendant-Appellant. | ) ) | O P I N I O N |

Before: BATCHELDER, COLE, and NALBANDIAN, Circuit Judges.

COLE, Circuit Judge. Marcus Caldwell appeals his conviction after a jury trial, arguing that the district court erred in denying his motion to dismiss the indictment under the Speedy Trial Act, 18 U.S.C. § 3161, and erred in denying his motion to suppress evidence. We affirm.

## I. BACKGROUND

This case arises from a lengthy investigation into an individual named Noel Mott, who ran a drug-trafficking operation based in Mansfield, Ohio. Eventually, police obtained a search warrant for a house implicated in the operation, located at 255 South Adams Street. In particular, the warrant affidavit described three drug-related incidents that occurred at 255 South Adams Street in August and September 2018: (1) a controlled drug buy executed at the house; (2) surveillance of an "identified drug user" entering and exiting the house after a phone call where Mott told the individual that Oxycodone could be purchased "ON ADAMS;" and (3) "after receiving complaints of suspected drug trafficking," police surveilling the house "observed a lot

of short stay in and out pedestrian foot traffic," which "is consistent with drug trafficking." (No. 19-099, Warrant Aff., R. 669-1, PageID 3876.) Police executed the search warrant on September 20, 2018; Caldwell was at the house during the search, which turned up drug evidence and two firearms.

On February 27, 2019, Caldwell, Mott, and 21 other individuals were indicted for participating in the drug-trafficking enterprise. Caldwell specifically was indicted for conspiracy to (1) possess with intent to distribute and (2) distribute fentanyl, heroin, and Oxycodone, in violation of 21 U.S.C. §§ 841(b)(1)(C), 846; possession with intent to distribute Oxycodone, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and use of a communication facility in furtherance of a drug-trafficking crime, in violation of 21 U.S.C. § 843(b). He was separately indicted for possessing a firearm and ammunition while having been convicted of a felony offense, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).

The large number of defendants soon complicated matters. To start, it took until June 19, 2019—nearly four months post-indictment—for the last of the defendants, Deshawn Dowdell, to be arraigned. In the interim, on May 6, 2019, Caldwell and numerous other defendants sought to continue trial beyond the 70-day limit provided by the Speedy Trial Act, 18 U.S.C. § 3161. The district court granted the continuance through December 31, 2019, finding that given the case's complexity, specifically the large number of defendants, failure to grant a continuance would risk denying defense counsel a reasonable time to prepare for trial. The continuance remained in place throughout 2019.

Shortly after the continuance expired, on January 20, 2020, Caldwell's counsel filed a motion to withdraw, citing an insurmountable breakdown in communications. The court granted

the motion on January 22 and tolled "Speedy Trial time" until new counsel could prepare for trial. Trial was reset for March 30, 2020. But on March 2, Caldwell's new counsel moved to continue the trial date again, stating he required more time to review the evidence. So trial was reset for June 2020. Then, the COVID-19 pandemic triggered one delay after another.

By December 2020, only Caldwell and Dowdell were left as defendants. Caldwell moved to sever his case from Dowdell's. Caldwell also filed a motion to suppress the evidence found at 255 South Adams Street, arguing that the information in the search warrant affidavit was stale and the warrant lacked probable cause.

After additional COVID-19-related and party-requested continuances, the trial was rescheduled for April 20, 2021, then reset first for June, then July, and eventually it was pushed back to August. The court also denied both of Caldwell's pretrial motions.

On the eve of the August trial date, Caldwell's counsel moved for another continuance because he was in the middle of a different trial. The court reset trial for September 14, 2021. Then, when the September trial was about to begin, Caldwell's counsel sought—and the court granted—yet another continuance, this time due to counsel's medical issues. Trial was reset for December 15, 2021, "the earliest possible date" given COVID-19-related backlogs. But on December 10, the government moved to continue trial because a key witness had contracted COVID-19 and would be unable to testify. The court reset trial for December 27.

Then, pursuant to a series of General Orders blanketing the Northern District of Ohio, all jury trials were suspended through February 11, 2022, due to a COVID-19 surge. On February 11, Caldwell filed a motion to dismiss the indictment, alleging violations of the Speedy Trial Act. Caldwell would not have to wait much longer, though: At last, his trial proceeded on February 14, 2022—the next business day after the end of the General Order's prohibition on jury trials.

Caldwell was convicted on all counts. The court also denied his motion to dismiss, finding that the delays Caldwell experienced did not violate the Speedy Trial Act because of its numerous exceptions, *see* 18 U.S.C § 3161(h).

Caldwell appealed, arguing that the district court erred in denying his motions to dismiss on Speedy Trial Act grounds and to suppress evidence under the Fourth Amendment.

## II. ANALYSIS

### A. Speedy Trial Act Violation

When reviewing a denial of a motion to dismiss on Speedy Trial Act grounds, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Sobh*, 571 F.3d 600, 602 (6th Cir. 2009).

Under the Speedy Trial Act, a defendant who enters a not-guilty plea is entitled to a trial within 70 days from the filing of the indictment against him or from the date of his first court appearance, whichever comes later. 18 U.S.C. § 3161(c)(1). If no trial occurs within the Act's designated timeframe, the indictment against the defendant is subject to dismissal. *Id.* § 3162(a)(2). The Act's 70-day limitation, however, comes with several caveats.

To start, in a case where "multiple defendants are charged together and no severance has been granted, one speedy trial clock governs." *United States v. Cope*, 312 F.3d 757, 776 (6th Cir. 2002); 18 U.S.C. § 3161(h)(6). Given that Caldwell and Dowdell were set to be tried together and the district court denied Caldwell's motion to sever, that puts the start of Caldwell's 70-day calendar at June 19, 2019, the day of Dowdell's first appearance, because "the excludable delay of one defendant is also excluded for his codefendants." *Sobh*, 571 F.3d at 602; *see United States v. Blackmon*, 874 F.2d 378, 380 (6th Cir. 1989).

Moreover, the Act broadly excludes,

[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the [parties or counsel], if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A). This provision covers most of the time that Caldwell spent awaiting trial.

First, the court imposed a continuance of over six months to allow defense counsel time to prepare for trial, finding that this continuance served "the interests of justice" given the complexity of the case. (*See* No. 19-099, Order, R. 172, PageID 713–14.) This initial continuance lasted through the end of 2019, such that Caldwell's Speedy Trial Act clock did not start to tick until January 1, 2020. Caldwell attributes this period of delay to a sua sponte order by the court, but the order plainly states that "the Defendant [(Caldwell)] requested a continuance . . . beyond the 70 day limit set forth in the Speedy Trial Act." (*Id.* at PageID 713.) More to the point, the Act permits a judge to impose a continuance "on his own motion" if necessary to serve "the ends of justice," so even if the continuance had been issued sua sponte, it would still pause the 70-day clock. 18 U.S.C § 3161(h)(7)(A).

Further still, although the clock began running on January 1, 2020, it stopped again on January 20 upon the filing of Caldwell's counsel's motion to withdraw. This is because the Act excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D); *see also Sobh*, 571 F.3d at 604 (counting a defendant's own motion to withdraw counsel as a pretrial motion that stops the clock under § 3161(h)(1)(D)).

And the clock remained paused after the court granted the withdrawal motion on January 22 and continued trial until Caldwell's new counsel could prepare. From there, the clock never restarted: Caldwell's counsel obtained continuances for various reasons, including time to prepare for trial, conflicting obligations in another case, and medical needs; district-wide COVID-19 shutdowns resulted in numerous, lengthy continuances; and the government also requested a continuance due to a key witness contracting COVID-19, *see* 18 U.S.C. § 3161(h)(3) (excluding delays "resulting from the absence or unavailability of the defendant or an essential witness," including where a witness's "whereabouts are known but his presence for trial cannot be obtained by due diligence").

Caldwell concedes "a significant amount of tolling is attributable to his moving or joining in motions to continue." (Appellant Br. 19.) He questions, however, whether other continuances—particularly those related to COVID-19—were adequately reasoned under the Speedy Trial Act. But "the Sixth Circuit has already held that a district court does not abuse its discretion in finding that the ends of justice served by postponing or limiting jury trials during the pandemic under the General Orders outweigh a defendant's right to a speedy trial." *United States v. Jones*, No. 21-3252, 2023 WL 1861317, at *7 (6th Cir. Feb. 9, 2023) (cleaned up) (quoting *United States v. Roush*, No. 21-3820, 2021 WL 6689969, at *2 (6th Cir. Dec. 7, 2021)).

Additionally, where the district court imposes a continuance under § 3161(h)(7)(A)'s broad "ends-of-justice" provision, it must explain its reasons for doing so, and "those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under [the Act]." *Zedner v. United States*, 547 U.S. 489, 506–07 (2006). The district court provided its reasons here, with at least some support found in its minute orders describing why continuances

would be granted or imposed, and a lengthier list of findings enumerated alongside its denial of Caldwell's motion to dismiss.

In sum, the district court correctly denied Caldwell's motion to dismiss on Speedy Trial Act grounds because the repeated delays in his case were justified under the Act.

**B. Suppression of Evidence**

As above, in reviewing a denial of a motion to suppress, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Waide*, 60 F.4th 327, 335 (6th Cir. 2023).

The Fourth Amendment requires that searches be supported by probable cause. U.S. Const. amend. IV. There is probable cause to search a place where the underlying facts show a "fair probability" that the place to be searched contains the items to be seized—namely, evidence of a crime. *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021). Where, as here, the search is conducted with a warrant, our analysis is cabined to the information within the four corners of the warrant affidavit. *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016).

Caldwell contends that the warrant here was not supported by probable cause because the warrant affidavit consisted of outdated, "stale" information. True, "stale information cannot be used in a probable cause determination." *United States v. Frechette*, 583 F.3d 374, 377–78 (6th Cir. 2009). But an affidavit as a whole is not stale if it contains sufficient factual allegations of recent events. *See United States v. Hython*, 443 F.3d 480, 485–86 (6th Cir. 2006); *United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998).

Here, even if some of the factual assertions in the warrant affidavit were stale, there were enough specific allegations about recent events to sustain a finding of probable cause. The warrant described: (1) a recent controlled drug buy at the relevant location; (2) surveillance of an

"identified drug user" entering and exiting the house after a phone call with Mott where they discussed buying drugs "ON ADAMS;" and (3) police's corroboration of complaints of drug-trafficking activity by observing foot traffic consistent with drug-trafficking activity. (No. 19-099, Warrant Aff., R. 669-1, PageID 3876.) These facts—all of which occurred within a few weeks to a few days of obtaining the warrant—sufficed to show a "fair probability" of ongoing drug-trafficking activity at the house. *United States v. Brooks*, 594 F.3d 488, 493–95 (6th Cir. 2010); *see also Spikes*, 158 F.3d at 923–24 (concluding that an affidavit supported probable cause where it included allegations of drug-related activity two months, one month, and 10 days before the warrant was sought).

The district court correctly denied Caldwell's motion to suppress because the warrant was supported by probable cause.

## III. CONCLUSION

For the foregoing reasons, we affirm.