2010 VT 63

## State of Vermont v. Earl McManis

[5 A.3d 890]

No. 09-259

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed June 24, 2010

*Christopher C. Moll*, Lamoille County Deputy State's Attorney, Hyde Park, for Plaintiff-Appellee.

*Ronald I. Merelman* and *Brice C. Simon* of *Stevens Law Office*, Stowe, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** Defendant was convicted of a single charge of marijuana possession and appeals from the trial court's denial of his motion to suppress and dismiss. Defendant argues that the State's application for a search warrant lacked probable cause and that the warrant was therefore invalid. Following a trial, the jury acquitted defendant of cultivation of marijuana, but convicted defendant of marijuana possession. The conviction was based on evidence that, according to defendant, was obtained in violation of his constitutional rights and should have been suppressed. We agree with defendant and reverse.

¶ 2. On September 10, 2007, Deputy Sheriff Jason Luneau received information from a confidential informant (CI) that defendant was growing marijuana in his house. To corroborate this information, the deputy sheriff (allegedly through the state's attorney's office, although that issue is disputed) applied for, and the court issued, an inquest subpoena for defendant's electrical records. Based upon the information supplied by the CI and the subpoenaed electrical records, the deputy sheriff then applied for a search warrant. The trial court granted the warrant, and the ensuing search revealed marijuana plants and drug paraphernalia at defendant's home.

¶ 3. Defendant argues on appeal that the evidence found at his home should have been suppressed because it was obtained in violation of his rights under Chapter I, Article 11 of the Vermont Constitution. Article 11 and its federal counterpart, the Fourth Amendment to the United States Constitution, are particularly protective of people's homes. See, e.g., *State v. Quigley*, 2005 VT 128, ¶ 10, 179 Vt. 567, 892 A.2d 211 (mem.) ("The home is, in most instances, a place where an individual expects privacy, and, more importantly, a place where society recognizes that this expectation is reasonable."). A warrant to enter a person's home must be based upon probable cause; otherwise, the warrant is invalid and any evidence obtained as a result of the ensuing search must be suppressed, even if the police acted in good faith in executing the search warrant. *State v. Oakes*, 157 Vt. 171, 173, 598 A.2d 119, 121 (1991).

¶ 4. Defendant offers two alternative arguments for why the State's application presented insufficient information to find probable cause for a search warrant. First, defendant argues that the inquest subpoena of his electrical records was invalid and that the

electrical records therefore should not have been used to establish probable cause. We need not reach this first argument because we conclude that defendant prevails on his second argument — that the search warrant was not supported by probable cause, even assuming, without deciding, that the electrical records were validly subpoenaed.

¶ 5. Our review of the trial court's probable-cause determination is deferential, *State v. Robinson*, 2009 VT 1, ¶ 6, 185 Vt. 232, 969 A.2d 127, and "we will not subject a supporting affidavit to hypertechnical scrutiny," *State v. Goldberg*, 2005 VT 41, ¶ 8, 178 Vt. 96, 872 A.2d 378 (quotation omitted). Nevertheless, some level of scrutiny is required before we will uphold a finding of probable cause. In particular, we must "review a finding of probable cause to see if it was based on substantial evidence." *State v. Chicoine*, 2007 VT 43, ¶ 8, 181 Vt. 632, 928 A.2d 484 (mem.); accord V.R.Cr.P. 41(c) (requiring substantial evidence for probable cause).

¶ 6. In evaluating whether probable cause existed at the time the court issued the warrant, we examine the information available to the court at that time "without reference to whether the search turned up the evidence the informant described." *Goldberg*, 2005 VT 41, ¶ 8. For a warrant to be valid, the State's application for the warrant must have provided sufficient information to establish probable cause. *State v. Cooper*, 163 Vt. 44, 51, 652 A.2d 995, 999 (1994) ("[T]he key inquiry is whether *the information provided in the affidavit* reveals circumstances from which a person of reasonable caution would conclude that a crime has been committed and that evidence of the crime will be found in the place to be searched." (emphasis added) (quotation omitted)). Other courts have referred to this as the "four corners rule." See, e.g., *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) ("When determining whether an affidavit establishes probable cause, we look only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant.").[1]

---

[1] Because the critical moment is the time of the application for the warrant, which in this case occurred in September 2007, and because we must limit our analysis to the four corners of the September 2007 application, our decision today regarding probable cause does not rely upon any of the testimony that was presented at the later hearing in August 2008 on defendant's motion to suppress

192

■ ¶ 7. As the United States Supreme Court has held, for a warrant to be valid, the judge issuing the warrant must "be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 564 (1971). Defendant argues that the State failed to supply sufficient information for such an independent conclusion in this case. We agree.

¶ 8. The search warrant that issued here was based solely on an affidavit submitted by the deputy sheriff. The affidavit stated that on September 10, 2007, the CI told the deputy sheriff that he knew that defendant was growing marijuana at defendant's house based upon the following information: (1) the CI bought marijuana from defendant at defendant's house in August 2007 and saw a freezer bag of marijuana, various smoking devices, scales, and a marijuana plant growing in defendant's bedroom closet; and (2) "friends had told" the CI that they saw marijuana plants growing in defendant's basement sometime around September 2006.

■ ¶ 9. Both of these statements present reliability issues. The first statement is hearsay because it is the deputy sheriff reporting what the CI told him, and the second statement is double hearsay because it is the deputy sheriff reporting what the CI heard from friends. As we have previously stated, when hearsay is incorporated into an affidavit, Vermont Rule of Criminal Procedure 41(c) requires us to follow the two-part *Aguilar-Spinelli* test for determining the reliability of such statements. *Robinson*, 2009 VT 1, ¶ 6 n.1 (explaining that, although United States Supreme Court has since abandoned *Aguilar-Spinelli* test in favor of widely criticized "totality of the circumstances" analysis from *Illinois v. Gates*, 462 U.S. 213 (1983), our Rule 41(c) "continues to contain the *Aguilar* and *Spinelli* requirements" (citing *Aguilar v. Texas*, 378 U.S. 108 (1964); *Spinelli v. United States*, 393 U.S. 410 (1969))); see also V.R.Cr.P. 41(c) (requiring "a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished").

■ ¶ 10. Under Rule 41(c), the State has to establish a substantial basis for the trial court to conclude both that the CI

and dismiss. We do, however, reference that hearing when discussing the State's failure to preserve certain arguments for appeal.

is "credible" and that the CI's information has "a factual basis."[2] Here, to establish that the CI was credible, the State had to demonstrate either (1) that the CI was an inherently credible source, or (2) that the specific information provided by the CI in this instance was credible. *Robinson*, 2009 VT 1, ¶ 8.

¶ 11. We first address whether the CI was an inherently credible source, and we conclude that the CI was not. Inherent credibility is usually established by evidence that the informant "has provided accurate information in the past." *Id.* ¶ 9 (citing *State v. Morris*, 165 Vt. 111, 130, 680 A.2d 90, 102-03 (1996)). The State's best argument here is that the deputy sheriff stated that, at the time the CI made his statements, the "CI also provided [him] with other information in regards to the distribution of illegal drug[s], which [he] was able to confirm." The deputy sheriff provided no details whatsoever as to the circumstances surrounding that information or whether its disclosure led to any charges or convictions. This bare and unsupported assertion failed to provide enough information to establish the CI's reliability. By comparison, in *Robinson*, we noted that the police officer stated the following when attesting to the CI's reliability:

> [The informant] has provided me reliable and creditable information in the past. I have been able to verify this [informant's] previous information and found it creditable. . . . The information this [informant] has provided has concerned Addison County cocaine deals, their customers, addresses and vehicles that they are driving. I have been able to confirm that this information was accurate.

*Id.* After a thorough analysis of applicable case law, we held in *Robinson* that even the detailed statements provided there were insufficient because "[t]he judge . . . was not informed, as *Aguilar* and our cases require, 'of the *underlying circumstances* from which the officer concluded that the informant . . . was "credible"

---

[2] As in *Robinson*, here we do not need to reach whether there is "a factual basis" for the CI's information because the affidavit fails to establish that the CI is credible. See *Robinson*, 2009 VT 1, ¶ 19 ("Because we conclude that the affidavit did not provide a sufficient basis to conclude that the confidential informant was credible, and that conclusion is dispositive of the appeal, we do not reach defendant's argument that the affidavit also failed to demonstrate the basis of the informant's knowledge.").

or his information "reliable." ' " *Id.* ¶ 12 (quoting *Aguilar*, 378 U.S. at 114). In *Robinson*, the affidavit was "vague as to the nature of the past information purportedly provided by the informant, and left the judge . . . unable to make an independent evaluation of the facts underlying the officer's determination that the informant was credible." *Id.* ¶ 13. We held that an officer's "mere statement" that an informant has provided other credible or reliable information "does not establish the informant's inherent credibility" for the benefit of the reviewing magistrate. *Id.* ¶ 14. The same can be said here. Nothing in the deputy sheriff's statement about the "other information" provided by the CI could have allowed a reviewing court to make an *independent* assessment of the CI's inherent credibility. See *id.* ¶ 12 ("As the *Aguilar* Court noted, conclusory affidavits present the spectre — offensive to constitutional guarantees — that the inferences from the facts which lead to the complaint will be drawn not by a neutral and detached magistrate . . . but instead, by a police officer engaged in the often competitive enterprise of ferreting out crime." (quotations omitted)).

■ ¶ 12. Because the State did not establish the inherent credibility of the CI, the affidavit provided probable cause only if the State could establish the credibility of the specific information provided by the CI in this instance. The test for credibility based on specific information is whether the State has made "a showing that the informant's tip was against penal interest or that the information was corroborated by police to the point where it would be reasonable for them to rely on it as accurate." *Morris*, 165 Vt. at 130, 680 A.2d at 103.

■ ¶ 13. As for whether the CI's statements were against penal interest, the State does not argue that here, and the State made no such proffer when it applied for the warrant. Indeed, the State's testimony below was that no penal interest was at stake for the CI. For these reasons, the argument that the CI provided information against penal interest is waived. See, e.g., *Rowe v. Brown*, 157 Vt. 373, 379, 599 A.2d 333, 337 (1991) (issues not raised on appeal are waived).

¶ 14. The next question is whether the statements of the CI were "sufficiently corroborated by police 'to the point where it [was] reasonable for them to rely on [these statements] as accurate.' " *Robinson*, 2009 VT 1, ¶ 15 (quoting *Morris*, 165 Vt. at

130, 680 A.2d at 102-03). Here, the State argues that the CI's statements were sufficiently corroborated by the following: (1) the deputy sheriff's drive-by of defendant's residence and a records check with the Department of Motor Vehicles (DMV), which confirmed that defendant owned a house and car that matched the descriptions provided by the CI; and (2) the subpoenaed electrical records.

¶ 15. The first category of actions — the drive-by of defendant's residence and the DMV records check — are strikingly similar to actions that we held in *Goldberg* were not sufficient to corroborate an informant's statements concerning criminal behavior. In *Goldberg*, the officer did a drive-by of the defendants' house and a DMV records check, and we held that, although this "did corroborate some of the peripheral details of [the informant's] story, it did nothing to confirm the allegations of criminal conduct." 2005 VT 41, ¶ 14. We reaffirmed in *Robinson* that *Goldberg* stood for the proposition that "the corroboration of mere innocent details did not prove that the informant's allegations of drug offenses were reliable." *Robinson*, 2009 VT 1, ¶ 16 (citing *Goldberg*, 2005 VT 41, ¶ 14). Here, the deputy sheriff's drive-by of defendant's house and DMV records check revealed no evidence of any criminal conduct and therefore "did nothing" to corroborate the criminal conduct alleged by the CI. *Goldberg*, 2005 VT 41, ¶ 14.

¶ 16. The only potentially corroborative evidence here was the information supplied by the subpoenaed electrical records. We noted briefly in *Goldberg* that the officer in that case recognized that obtaining utility records can be a way to corroborate an informant's story. *Id.* But here, even assuming, without deciding, that defendant's electrical records were obtained under a properly issued subpoena, those records failed to corroborate the CI's story.

¶ 17. The affidavit presented two facts taken from the power records that, according to the deputy sheriff, corroborated what the CI told him. First, the affidavit stated that "[a]fter reviewing the power records, you can see that the records indicate a lot higher power usage at this time last year" and that this is "consistent with what the CI said" about how "friends saw these marijuana plants a year ago." The problem here is that the affidavit drew no connection between people seeing marijuana

plants at a particular time and power usage being higher during that time. Although the affidavit stated that "[i]ndoor cultivators of marijuana use high powered, heat emitting lamps (commonly high powered sodium and metal halide lamps) to foster the growth of indoor marijuana plants," it stated nothing about the times in which such lamps are used. Further, to the extent that the deputy sheriff was trying to claim that power usage is higher any time that marijuana plants are growing, this claim was contradicted by his statement that power usage was much higher when the CI's friends allegedly saw the plants in 2006 than almost exactly a year later when the CI claimed to have personally seen the plants. Nothing in the affidavit explained why there would be a disparity in the power usage during the same growing season from one year to another if defendant had been growing marijuana both years.

¶ 18. Turning to the second fact that the deputy sheriff relied on as corroborating the CI's story, the affidavit stated that "[t]he power records further indicate[] power usage has slightly increased each month starting with March of 2007." The affidavit then provided a brief summary of the monthly meter readings leading up to the time when the CI claimed to have personally seen the marijuana plants. As an initial matter, the affidavit overstated this claim, since monthly usage actually went down during two of the five transitions. The affidavit also used monthly aggregates of kilowatt hours for comparison, ignoring the fact that the monthly readings during these months spanned anywhere from twenty-seven to thirty-four days — a significant factor that must be taken into account in determining whether actual daily power usage had increased. But even if we were to overlook these deficiencies, the affidavit was insufficient because it provided no information about the significance of power usage increasing during this time. To the extent that the affidavit was claiming that indoor marijuana growers use their lamps more during the summer months, nothing in the affidavit made such a statement. Further, the power records revealed that there was at least one month in 2006 and another month in 2007 in which defendant had a similarly high reading during the dead of winter. Without any information to put the power records into context, the bare recitation of an increase in power usage cannot corroborate the CI's claim of a marijuana growing operation. In short, even if the affidavit was correct that defendant's power usage increased at

certain times of the year, the affidavit provided no information explaining why it was more likely that this increase was due to marijuana cultivation rather than innocent activity, such as using more air conditioning during the summer.

¶ 19. In summary, regardless of whether the power records were properly subpoenaed, the affidavit failed to provide sufficient information to establish probable cause, and the search warrant was therefore invalid. Defendant's motion to suppress should have been granted, and, as a result, the court should also have granted defendant's motion to dismiss, as a conviction cannot be upheld in this case without the illegally obtained evidence. Although the result of our decision today is to acquit a defendant who undoubtedly possessed marijuana in violation of the law, we noted in *Robinson* that such a result is sometimes necessary because "the application of the exclusionary rule here 'encourages police to diligently corroborate information from a potentially unreliable source'" before applying for a search warrant to invade someone's home. 2009 VT 1, ¶ 19 (quoting *Goldberg*, 2005 VT 41, ¶ 19).

*Reversed; defendant's motion to suppress and dismiss is granted.*