2012 VT 6

**STATE of Vermont v. Richard C. CHAPLIN**

[44 A.3d 153]

No. 10-477

¶ 1. January 31, 2012. In this case, a search warrant was issued to search the home of defendant, and the search turned up incriminating evidence. In response to a motion to suppress, however, the supe-rior court determined that the warrant was not supported by an affidavit showing probable cause to believe that defendant had committed a crime under the standards contained in V.R.Cr.P. 41(c). We agree and affirm.

¶ 2. In the early morning hours of August 10, 2009, Bob's Auto in Essex was burglarized. A number of items were stolen, including over one hundred Vermont vehicle inspection stickers, a speaker, and numerous SnapOn brand sockets and wrenches. In connection with this crime, an Essex police detective (the detective) applied for a warrant to search defendant's home.

¶ 3. The detective submitted a twelve-paragraph affidavit of probable cause in support of his application, which relied on evidence from a surveillance video, the statements of a named informant, and the statements of two confidential informants. The surveillance video came from a convenience store at the location of the burglary. According to the affidavit, the surveillance video showed "a dark colored minivan, possibly blue or green in color," which drove past the camera at 3:13 a.m. during the morning of the burglary. The affidavit noted that the tire tracks and the terrain suggested that "the perpetrator's vehicle may have sustained minor front end damage to the undercarriage."

¶ 4. On August 24, 2009, pursuant to a search warrant, two inspection stickers were found in the residence of an individual who subsequently became the named informant in this case. The recovered inspection stickers were identified as two of those that had been stolen from Bob's Auto. As described in the affidavit, the named informant admitted to selling inspection stickers but denied participating in the burglary. In a sworn interview, she told the detective that he should "look at the person who provided the inspection stickers to her source." She stated that she did not know this person's name, but

she offered an extensive description: an older, overweight male, who is balding with dark hair and a moustache, has children, lives with his girlfriend in an apartment behind Essex High School, drives a maroon minivan, has about five DWIs, was in court around August 17, and is the cousin of someone else identified by name. The detective asked the named informant to find out the name of the individual she described, and they exchanged telephone numbers for future contact. That evening, the detective received a voicemail from the named informant's telephone number. The caller stated that she had a tip regarding the burglary in Essex and went on to state that it was Ricki Chapman, who lives behind the high school and drives a maroon van with "Rick and Jess" on the back plate.

¶ 5. The probable cause affidavit went on to state that the named informant had told a paid confidential informant (identified as "CS 63") that "Ricki has the stolen speaker in his car and has the tools in his house." A second paid informant (identified as "CS 60") conveyed to the detective that "Ricki Chaplin has a set of SnapOn tools for sale and that these tools were recently seen in his apartment." The affidavit further conveyed that Chaplin had "indicated to the CS 60 that he had access to inspection stickers." The affidavit stated, without elaboration, that each informant "ha[d] provided information in the past that has been corroborated by other investigative means."

¶ 6. Finally, the detective's affidavit stated that he had confirmed that Richard Chaplin lived with his girlfriend Jessica in an apartment at 38 Thasha Lane, which runs behind the high school in Essex. The detective had checked the residence and observed "a maroon/purple Dodge Caravan bearing VT REG ETL147 parked in front of 38 Thasha Lane." This vehicle was registered to defendant and his girlfriend. The affidavit stated, "The shape,

color and size of Chaplin's van appears [sic] to match that of the van captured on video at the scene of the burglary." The detective concluded that stolen property might be found at the residence or in the vehicle and that photographs of the vehicle's undercarriage might assist in comparing it to the vehicle in the surveillance video.

¶ 7. On the basis of this affidavit, a judicial officer issued the warrant on August 28, 2009. This warrant was executed four days later, on September 1. Following defendant's arrest on charges of burglary under 13 V.S.A. § 1201(a), the Chittenden Superior Court, Criminal Division, granted a motion to suppress the evidence gathered pursuant to the warrant, concluding that the detective's affidavit did not provide sufficient information to support a finding of probable cause. Consequently, the court dismissed the charges against defendant for lack of a prima facie case. The State of Vermont appeals from this decision.

¶ 8. A judicial officer properly issues a warrant where "there is probable cause to believe that the grounds for the application exist based upon an affidavit." V.R.Cr.P. 41(c)(1); see also State v. Platt, 154 Vt. 179, 185, 574 A.2d 789, 793 (1990) ("The key inquiry in determining whether probable cause exists is whether the information provided in the affidavit reveals circumstances from which a person of reasonable caution would conclude that a crime has been committed and that evidence of the crime will be found in the place to be searched."). In reviewing a motion to suppress evidence that was gathered pursuant to a search warrant, the inquiry is limited to whether the application for the warrant contained sufficient information to establish probable cause. State v. McManis, 2010 VT 63, ¶ 6, 188 Vt. 187, 5 A.3d 890 ("In evaluating whether probable cause existed at the time the court issued the warrant, we examine the information available to the

court at that time . . . ."); see also *Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention."). Our review is therefore limited to the "four corners" of the warrant application. See *McManis*, 2010 VT 63, ¶ 6 (" 'When determining whether an affidavit establishes probable cause, we look only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant.' " (quoting *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010))). Thus, the essential question here is whether the information provided in the detective's affidavit established probable cause to believe that evidence of the burglary would be found at defendant's residence.[1]

¶ 9. In reviewing a motion to suppress, we are deferential to the factual determinations and inferences made in the initial determination of probable cause, but we review conclusions of law without deference. *State v. Bauder*, 2007 VT 16, ¶ 9, 181 Vt. 392, 924 A.2d 38. Where, as here, the motion is to suppress evidence seized pursuant to a warrant, the initial finding of probable cause by a judicial officer is given "great deference." See *State v. Maguire*, 146 Vt. 49, 53, 498 A.2d 1028, 1030 (1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). This deference to the judgment of an issuing officer encourages the use of warrants. See *State v. Ballou*, 148 Vt. 427, 434, 535 A.2d 1280, 1284 (1987) ("We are cautioned against a 'grudging or negative attitude . . . toward warrants' because that attitude will en-

courage warrantless searches." (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965))). Even under this heightened deference with regard to factual determinations and inferences drawn therefrom, however, the ultimate question of whether the factual claims in an affidavit are sufficient to amount to probable cause is still a matter of law appropriate for fresh appellate review. See *Spinelli v. United States*, 393 U.S. 410, 419 (1969). Our review is thus "to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *State v. Defranceaux*, 170 Vt. 561, 562, 743 A.2d 1074, 1075 (1999) (mem.).

¶ 10. The central evidence in the affidavit is that provided by the named informant to the detective. According to Vermont Rule of Criminal Procedure 41(c)(1), a judicial officer's determination that probable cause exists may be based on hearsay "in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." This rule codifies the two-pronged test from *Aguilar v. Texas*, 378 U.S. at 114-15, and *Spinelli v. United States*, 393 U.S. at 415-16.[2] See Reporter's Notes, V.R.Cr.P. 41(c). The two-pronged test ensures that a judicial officer can assess the evidence provided by knowing its basis and that there is a particular reason to view this hearsay evidence as reliable. See *Ballou*, 148 Vt. at 434, 535 A.2d at 1284 ("[T]he first prong requires that the affidavit

---

[1] The affidavit of probable cause for arrest includes some pieces of information that were not present in the affidavit of probable cause included in the search warrant application. Our review is limited to what was included in the affidavit upon which the search warrant was issued.

[2] "Although the Supreme Court has since abandoned this standard and held that the United States Constitution requires a 'totality of the circumstances' approach to probable cause determinations, *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983), we have continued to apply the two-pronged test to cases decided under the Vermont Constitution." *State v. Goldberg*, 2005 VT 41, ¶ 9, 178 Vt. 96, 872 A.2d 378.

transmit the factual basis for any conclusions drawn by the informant so that the judicial officer can perform an independent analysis of the facts and conclusions. The second prong requires that facts be presented to the judicial officer that show either the informant is inherently credible or that the information from the informant is reliable on this occasion." (citations omitted)). We stress that the above requirements of Criminal Rule 41(c)(1) apply to evidence from any informant, whether or not named.

¶ 11. We conclude that, with regard to the statements of the named informant, the affidavit of probable cause fails both prongs of the test. First, the affidavit does not establish the factual basis for the named informant's information. As we explained in *State v. Barrett*, 132 Vt. 369, 373, 320 A.2d 621, 624-25 (1974):

> [T]he "basis of knowledge" test . . . is not concerned with the integrity or veracity of the informant, but with the actual source of the information from which the magistrate is to be drawing his conclusion as to probable cause. Is it the direct sensory perception of the informer, or is he merely repeating someone else's conclusion? To pass muster, the informant must transmit the factual basis for the conclusions, so that the magistrate may make his own direct analysis.

Although nothing in the affidavit describes the source of her information, the detail of the named informant's description may suggest some direct observation on her part. Even if we are willing to draw an inference that the named informant has personally observed Richard Chaplin from the detailed nature of her physical description and that the detail of her description itself establishes a factual basis for her identification of Richard Chaplin, these inferences do not establish a factual basis for her identification of Richard Chaplin *as someone involved in the burglary*. Although the named informant may have had direct acquaintance with Chaplin's appearance and household, this information is not the basis for the search. Cf. *State v. Robinson*, 2009 VT 1, ¶¶ 16-19, 185 Vt. 232, 969 A.2d 127 (concluding that probable cause was not established by informant's correct description of the time, location, and vehicle that the defendant would be driving because these were "mere innocent details"); *Goldberg*, 2005 VT 41, ¶ 14 (explaining that corroborating "peripheral details" of an informant's story "did nothing to confirm the allegations of criminal conduct"). The incriminating assertion — that Chaplin participated in the burglary — contained nothing to suggest that it was anything "more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli*, 393 U.S. at 416. This failure to establish the factual basis for the informant's claim is the most significant of many flaws in the warrant application. Without an explanation of its factual basis, the informant's evidence fails the first prong of the *Aguilar-Spinelli* test and therefore cannot establish probable cause.

¶ 12. Additionally, although some indicia of reliability are present — particularly, the fact that the named informant was named in the affidavit and provided a sworn statement — the affidavit leaves doubts about whether her statements were reliable. Reliability of particular hearsay statements is generally established either "if the informant acted against penal interest, or if police corroborated the information 'to the point where it would be reasonable for them to rely on it as accurate.'" *Goldberg*, 2005 VT 41, ¶ 11 (quoting *State v. Morris*, 165 Vt. 111, 130, 680 A.2d 90, 102-03 (1996)). Although the named informant acted against her penal interest in admitting

that she was selling inspection stickers, her statement that Chaplin committed the burglary was certainly not against her penal interests but instead was intended to show that she did not commit the burglary. Cf. *Ballou*, 148 Vt. at 435 n.3, 535 A.2d at 1284 n.3 (cautioning against misuse of the admission against penal interest exception). Similarly, although the affidavit describes some independent corroboration of a few aspects of the named informant's statements — Chaplin's address, residence with his girlfriend, and ownership of a minivan — there were many reasons for pause. The license plate did not match that described by the informant, and significantly, the color of the minivan, maroon or purple, did not match the "possibly blue or green" color seen in the surveillance video. There was ample possibility for the police to confirm other aspects of the informant's statements, but the affidavit describes no such efforts. Cf. *Goldberg*, 2005 VT 41, ¶ 14 (noting that police's only attempt at corroboration was driving by the residence and performing a DMV check).

¶ 13. The State relies heavily on *State v. Arrington*, 2010 VT 87, 188 Vt. 460, 8 A.3d 483, and we agree it is helpful to its position even though it involves a warrantless arrest. It does not hold, however, that the fact that the informant is named to the court and the defendant, and gives an affidavit under the penalty of perjury, is determinative irrespective of other factors. See *id.* ¶¶ 19-20 (informant's name and affidavit are factors showing reliability). The State's case is significantly weaker than that in *Arrington* because of the absence of other factors important in that decision. For example, the informant in *Arrington* described accurately the make and color of the defendant's vehicle and the route, and time of arrival, of the defendant to sell her drugs. *Id.* ¶ 17. There is nothing similar here. Additionally, the informant in *Arrington*, a drug

dealer, was identifying the direct seller to her, and her story of their interaction was consistent with a common pattern and with her behavior. *Id.* ¶ 15. The situation is markedly different here.

¶ 14. The statements of the confidential informants also do not satisfy the *Aguilar-Spinelli* test. The only information that CS 63 provided was other statements made by the named informant. While this evidence might slightly support the credibility of the named informant by showing that she made similar statements to others and not just to the detective, it does not establish the basis for the named informant's statements, which is the crucially missing link.

¶ 15. The information from CS 60 is also problematic. The factual basis for CS 60's statement that Chaplin had a set of SnapOn brand tools for sale in his apartment was not explained. In fact, the affidavit obfuscates the basis for this information by use of the passive voice: "these tools were recently seen." The second piece of information, however, does describe something of a first-hand basis. According to CS 60, Chaplin "indicated" to CS 60 that he had "access to" inspection stickers. The difficulty with this statement is that it is too vague to allow any meaningful analysis of its content. See *Ballou*, 148 Vt. at 434, 535 A.2d at 1284 (information must be such that "the judicial officer can perform an independent analysis of the facts and conclusions"); *Barrett*, 132 Vt. at 373, 320 A.2d at 625 (information must be such that "the magistrate may make his own direct analysis").

¶ 16. Moreover, the affidavit's bare statements that CS 63 and CS 60 had provided information in the past that had been corroborated by other means are not sufficient to establish inherent credibility. We have twice recently rejected this kind of general language. In *Robinson*, we found inadequate the affiant's statements that the informant "ha[d] pro-

vided . . . reliable and creditable information in the past" and that he had "been able to verify this [informant's] previous information and found it creditable." 2009 VT 1, ¶ 4. In *McManis*, we found lacking a deputy sheriff's statement that "CI also provided [him] with other information in regards to the distribution of illegal drug[s], which [he] was able to confirm." 2010 VT 63, ¶ 11. In this case, the detective's affidavit actually provided even less detail than either of these examples. There was no description of the content of past information provided, how it was corroborated, or how it proved useful. We now reaffirm that "[t]he mere statement that the informant had in the past provided unspecified, albeit purportedly 'creditable,' 'accurate,' or 'reliable' information . . . does not establish the informant's inherent credibility." *Robinson*, 2009 VT 1, ¶ 14.[3]

---

[3] We additionally reject another argument offered by the State concerning the credibility of the confidential informants for *Aguilar-Spinelli* purposes. The State contends that the confidential informants should be considered "named informants" because their identity is known to the police. The State's support for this proposition is based on a misreading of *Arrington*, 2010 VT 87, ¶¶ 19-20. In *Arrington*, the declarant made a sworn statement, and her identity was available to the defendant. As we explained there, "the informant fully exposed herself and her information to scrutiny, she gave the basis of her information, she exposed herself to retaliation, and she assumed the obligation of her oath." *Id.* ¶ 20. That is not normally the case with confidential informants, like those involved in this case. Indeed, a confidential informant — as opposed to an anonymous tipster — is by definition known to the police. As *Arrington* explained, confidential informants not named by the police are pre-

¶ 17. At certain points, the State concedes that the *Aguilar-Spinelli* test was not met, but it contends that hearsay that could not itself establish probable cause can nevertheless elevate suspicions based on personal observations to the level of probable cause. There is some support for this contention. See *Spinelli*, 393 U.S. at 418 ("We conclude, then, that in the present case the informant's tip . . . was not sufficient to provide the basis for a finding of probable cause. This is not to say that the tip was so insubstantial that it could not properly have counted in the magistrate's determination. Rather, it needed some further support."); *State v. Delmonaco*, 481 A.2d 40, 45 (Conn. 1984) ("Even though 'the suspicions engendered by the informant's report' may be insufficient to justify issuance of a warrant independently, where the affiants' own observations are very incriminating, the informant's report may bridge the gap and 'ripen into a judgment' of probable cause." (quoting *Spinelli*, 393 U.S. at 418)); 2 W. LaFave, Search & Seizure § 3.3(f), at 194 (4th ed. 2004) ("Yet another type of case is that in which it cannot quite be said that 'probable cause is established without necessary resort to the hearsay,' but where this other information standing alone is nonetheless highly suspicious. May it be said in such a case that the informant's story, albeit lacking a showing of the basis of knowledge, may be taken into account for the purpose of supplying the 'little bit more' which is needed to elevate this other information up to the level of probable cause? . . . [T]he answer is unquestionably yes."). The idea is that even hearsay that itself fails to establish probable cause under the *Aguilar-Spinelli* test should still be considered alongside other nonhearsay evidence when viewing the affidavit as a whole. According to this argument, then,

---

cisely the type of source at which the *Aguilar-Spinelli* test is directed. *Id.*

the hearsay evidence from the named informant and CS 60 could be considered alongside the other aspects of the affidavit. In this way, the State argues, the surveillance video and the detective's personal observations of Chaplin's minivan supported a nonhearsay basis for suspicion, and the hearsay evidence could elevate this suspicion to probable cause.

¶ 18. Even assuming that the State is correct that sometimes hearsay that is otherwise inadequate under the *Aguilar-Spinelli* test can nonetheless be used to bolster nonhearsay-based suspicions, this is not such a case. In this case, the detective did not hold an independently supported suspicion of the defendant and then find that suspicion corroborated by hearsay evidence. The only nonhearsay basis for suspicion was the fact that Chaplin owned a minivan, the color of which is not described as matching that observed in the surveillance video. Such an innocuous fact, which would have drawn no attention independent of the hearsay, cannot then be used to bootstrap hearsay statements over the *Aguilar-Spinelli* test threshold.

¶ 19. One noteworthy omission in this case was the lack of corroboration of many of the details of the informant's identification. The informant described the name, gender, age, weight, hair color, hair loss, facial hair, children, living arrangement, automobile, license plate, criminal history, relative, and recent appearance in court of the perpetrator. Virtually all of this information was easy to verify, and the detective verified virtually none of it. Some of the limited information he attempted to verify was wrong — the perpetrator's name and license plate. This is hardly a case where the nonhearsay information pulls the hearsay information over the line.

¶ 20. We are also concerned that the State asks us to do precisely what it cautions against. We are reminded that "[a]ffidavits must be viewed in a common

sense manner and not be subjected to hypertechnical scrutiny," *Ballou*, 148 Vt. at 434, 535 A.2d at 1284, and that the determination of probable cause should be "based upon a common-sense reading of the entire affidavit," *Spinelli*, 393 U.S. at 415. A common-sense reading of the detective's affidavit shows the statements of the named informant to be the linchpin. To say that her statements merely corroborated the detective's personal observations would be to put matters backwards. The privacy protections afforded by the *Aguilar-Spinelli* test — the assurance that warrants shall not be issued on the basis of unsubstantiated rumor or reputation — are not to be subverted in this way. Regardless of whether independently insufficient hearsay might be used to lend credibility to an otherwise vulnerable investigation, an independently insufficient investigation cannot be used to lend credibility to otherwise vulnerable hearsay.

*Affirmed.*