2013 VT 67

## State of Vermont v. Loren Senna

[79 A.3d 45]

No. 12-173

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed August 2, 2013

*Thomas J. Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Robinson, J.** Defendant appeals from a decision of the superior court, criminal division, denying his motion to suppress the evidence and dismiss the charges against him. This suppression motion raises two questions. First, whether, in light of Vermont's law exempting qualifying registered patients from prosecution for possession and cultivation of marijuana, the smell of fresh marijuana outside a home, without determination of whether any occupants are registered patients, can support a finding of probable cause. Second, whether the hearsay statements of an identified neighbor were sufficiently credible to meet the require-

ments of Vermont Rule of Criminal Procedure 41(c) and the underlying constitutional requirements that rule embodies. We conclude that both the marijuana odor and the neighbor's statements were properly considered in the probable-cause analysis, and accordingly affirm.

¶ 2. The facts as found by the trial court and unchallenged by defendant on appeal are as follows. Responding to a report of a screaming child, a City of Burlington police officer visited defendant's apartment. The officer knocked on the door, and when defendant answered she informed the defendant and his partner of the complaint. The officer saw that there were two children inside the home who did not appear to be in distress. When the officer approached the residence she noted the odor of fresh marijuana approximately two feet from the front door. A second officer who arrived shortly thereafter also made this same observation, noting that the scent got stronger as the officer approached the door.

¶ 3. After spending some time in the home, the first officer left defendant's residence and spoke with a next-door neighbor who identified herself to the police. She reported that in the past she had seen defendant and his partner use heroin in front of their children. She told the officer that defendant and his partner had told her that they sell marijuana and heroin out of their home, that every day she observes a great deal of foot traffic of unfamiliar individuals in and out of the home at all times of day, and that frequently people mistaking her residence for theirs knock on her door looking to purchase marijuana or heroin.

¶ 4. Following these encounters, the officer obtained a warrant to search defendant's apartment. On the basis of evidence obtained in the search, the State charged defendant with cultivation of more than twenty-five marijuana plants and possession of marijuana.

¶ 5. Defendant filed a motion seeking to suppress the fruits of the search warrant and all evidence flowing from that. Defendant argued that he did not consent to the officer's entry into his home at the time of the initial encounter, so the court could not consider evidence obtained during that encounter; that the odor of marijuana on an outdoor porch attached to a multi-unit apartment building did not support a probable cause finding; that the odor of marijuana alone is not sufficient to support a finding of probable cause when a law enforcement officer has not first checked the

Department of Public Safety registry to find out whether the suspect is authorized to possess the controlled substance; and that the statements of the neighbor of unknown credibility were uncorroborated and lacked any time frame to support a warrant.

¶ 6. The trial court agreed that the State had not established that the police officer's initial entry into defendant's home was consensual, and excluded the evidence the State gathered during that entry. See *State v. Morris*, 165 Vt. 111, 128-29, 680 A.2d 90, 102 (1996) (where portion of evidence in affidavit must be expunged, court must determine whether remaining information in affidavit establishes probable cause to support warrant). The court nonetheless denied ,defendant's suppression motion, concluding that the smell of fresh marijuana just outside the front door and the neighbor's statements provided probable cause to support the issuance of the search warrant.

¶ 7. Defendant entered a conditional guilty plea on the cultivation charge and appealed the trial court's ruling on the suppression motion. Defendant makes two arguments on appeal. First, he renews his argument that because of Vermont's law exempting qualifying registered individuals from prosecution for possession or cultivation of marijuana, the smell of fresh marijuana outside defendant's door cannot support a finding of probable cause unless the officer confirms that the suspect is not listed in the Department of Public Safety registry. Second, he argues that the affidavit of probable cause did not establish the reliability of the named informant's hearsay statements.

¶ 8. "We defer to a judicial officer's finding of probable cause, and we will not subject a supporting affidavit to hypertechnical scrutiny." *State v. Goldberg*, 2005 VT 41, ¶ 8, 178 Vt. 96, 872 A.2d 378 (quotation omitted); see *State v. Chaplin*, 2012 VT 6, ¶ 9, 191 Vt. 583, 44 A.3d 153 (mem.) (stating that when motion seeks suppression of evidence seized pursuant to warrant, "the initial finding of probable cause by a judicial officer is given great deference" so as to encourage use of warrants (quotation omitted)). But though we defer to the judicial officer's factual determinations and inferences drawn therefrom, we review de novo the ultimate legal question of whether an affidavit's factual claims amount to probable cause. *Id.* "Generally, probable cause exists when the affidavit sets forth such information that a judicial officer would reasonably conclude that a crime had been commit-

ted and that evidence of the crime will be found in the place to be searched." *Goldberg*, 2005 VT 41, ¶ 8 (quotation omitted).

## I.

¶ 9. The first question we consider is whether, in light of Vermont's "medical marijuana" law, the smell of fresh marijuana outside the entry to a home can be a factor supporting a finding of probable cause to search the house. Vermont law allows a person who has been diagnosed in the course of a bona fide health care professional-patient relationship with a debilitating medical condition, as that term is defined by statute, to go through a specific process to become a "registered patient." 18 V.S.A. § 4473. A duly registered patient who complies with the requirements of the statute, including specific limits on the number of marijuana plants and usable marijuana by weight a registered patient can possess, is exempt from arrest or prosecution for possession or cultivation. 18 V.S.A. § 4474b; *id.* § 4472. The Department of Public Safety maintains a secure electronic database accessible to law enforcement twenty-four hours per day that allows law enforcement to verify, among other things, that a person or entity is a registered patient or caregiver.

¶ 10. Defendant argues that because Vermont law allows certain individuals under given circumstances to possess marijuana, the smell of unburned marijuana alone does not create probable cause that a crime has been or is being committed. He relies on a decision of the Massachusetts Supreme Judicial Court in which that court held that because Massachusetts law treated the possession of one ounce or less of marijuana as a civil rather than a criminal offense, the odor of marijuana cannot support suspicion of a crime. *Commonwealth v. Cruz*, 945 N.E.2d 899 (Mass. 2011).

¶ 11. Because Vermont's "medical marijuana" law is readily distinguishable from Massachusetts's law decriminalizing the possession of small amounts of marijuana, we need not decide whether the Massachusetts Supreme Judicial Court's reasoning in *Cruz* is persuasive.[1] Vermont's "medical marijuana" law does not

---

[1] Similarly, we need not consider whether Vermont's recent decriminalization of small amounts of marijuana undermines our prior holding that "the odor of marijuana, detected by a trained and experienced police officer, can provide a reasonable basis to believe that" a marijuana-based crime has occurred. *State v. Guzman*, 2008 VT 116, ¶ 14, 184 Vt. 518, 965 A.2d 544; see 2013, No. 76, § 1.

purport to decriminalize the possession of marijuana; it merely exempts from prosecution a small number of individuals who comply with rigid requirements for possession or cultivation. 18 V.S.A. § 4474b. In that sense, the law creates a defense to prosecution.

¶ 12. Even in Massachusetts, *after* the *Cruz* decision, the Massachusetts Supreme Judicial Court recognized, in a much more analogous context, that in establishing a prima facie case of probable cause, the Commonwealth was not required to disprove an affirmative defense — such as a defense that an individual possessing otherwise-contraband hypodermic needles was lawfully enrolled in a needle-exchange program — unless the defense "appear[ed] clearly and without contradiction on the record." *Commonwealth v. Walczak*, 979 N.E.2d 732, 744 n.13 (Mass. 2012) (quotation omitted). Another Massachusetts case cited in *Walczak*, *Commonwealth v. Landry*, 779 N.E.2d 638 (Mass. 2002), involved the question of whether police had probable cause to arrest an individual for illegal possession of a hypodermic needle when she produced a facially valid needle-exchange-program membership card, demonstrating that she was entitled to possess hypodermic needles. That court held that "when a person presents a facially valid exchange program membership card, a police officer may not lawfully arrest that person for violating [the law prohibiting possession of hypodermic needles] absent evidence that the card is invalid or the bearer is not entitled to possess it." *Id.* at 642. Significantly, the court did not suggest that police had an affirmative duty, even in the absence of any evidence that a suspect was enrolled in a needle-exchange program, to rule out the possibility before making an arrest.

¶ 13. By analogy, at the time of the search in question, cultivation of marijuana was a crime in Vermont. 18 V.S.A. § 4230(a), *amended by* 2013, No. 76, § 1. Some individuals were exempt from prosecution by virtue of their listing in the Department of Public Safety patient registry, but cultivation was still a crime. There is no evidence that either defendant or his partner was, in fact, a registered patient. The small possibility that someone in the residence might have been immune from prosecution, in the absence of any evidence that anyone was, does not

negate the State's probable cause to search based in part on the odor of fresh marijuana.[2]

¶ 14. The Michigan Court of Appeals has considered the impact of the Michigan Medical Marihuana Act (MMMA), which includes the kind of registration and exemption from prosecution reflected in Vermont's law, on the determination of probable cause to search in a case similar to this. *People v. Brown*, 825 N.W.2d 91, 93 (Mich. Ct. App. 2012). The court in *Brown* described Michigan's medical marijuana law as a "very limited, highly restricted exception to the statutory proscription against the manufacture and use of marijuana in Michigan." *Id.* at 94 (quotation omitted). Rejecting an argument almost identical to that advanced by defendant here, the court wrote:

> We find that because the possession, manufacture, use, creation, and delivery of marijuana remain illegal in Michigan even after the enactment of the MMMA, a search-warrant affidavit concerning marijuana need not provide specific facts pertaining to the MMMA, i.e., facts from which a magistrate could conclude that the possession, manufacture, use, creation, or delivery is specifically not legal under the MMMA.

*Id.* at 93.

¶ 15. The Washington Supreme Court has .held likewise, although the decision is less squarely on point because that state's "compassionate use" law expressly created an affirmative defense to conviction in certain circumstances rather than an exemption to prosecution for registered individuals. See· *State v. Fry*, 228 P.3d 1, 5 (Wash. 2010) ("Possession of marijuana, even in small amounts, is still a crime in the state of Washington [notwithstanding a recognized 'compassionate use defense' to marijuana charges]. A police officer would have probable cause to believe [the defendant] committed a crime when the officer smelled marijuana emanating from the [defendant's] residence.").

■ ¶ 16. For the above reasons, we conclude that the trial court properly considered the odor of fresh marijuana emanating from defendant's home in assessing probable cause to search his

---

[2] We need not decide whether, if defendant or his partner *had* produced any evidence that either was listed in the patient registry, the odor of marijuana would nonetheless have supported probable cause for a search warrant.

residence. At least in the absence of any indication that a resident of a home is a registered patient, the fact that Vermont has a registry of patients who are exempt from prosecution for possession or cultivation of marijuana does not undermine the significance of the smell of marijuana as an indicator of criminal activity.

## II.

¶ 17. We turn to defendant's argument that the neighbor's statements could not be relied on to generate probable cause as they were hearsay. To evaluate probable cause determinations based on hearsay evidence, we apply a two-pronged test established in *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969), and codified in Vermont Rule of Criminal Procedure 41(c), which allows a finding of probable cause based on hearsay "provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." *Goldberg*, 2005 VT 41, ¶¶ 9-10. The factual basis prong concerns the actual source of the information rather than the integrity or veracity of the informant. *State v. Arrington*, 2010 VT 87, ¶ 13, 188 Vt. 460, 8 A.3d 483. This prong is satisfied when, as in the instant case, the informant provides first-hand information. *Id.* Defendant does not contest that the first prong is satisfied here.

¶ 18. With respect to the "credibility" prong, we have said that "[a]n affidavit may establish an informant's credibility in either of two ways: (1) by demonstrating his or her inherent credibility as a source; or (2) by demonstrating the reliability of the information he or she has provided on the occasion in question." *Goldberg*, 2005 VT 41, ¶ 11. To establish credibility, the State typically demonstrates that, through branch one, the informant provided correct information in the past or acted against penal interest in providing the information, or, through branch two, that the police independently corroborated the information to the point that it is reasonable to rely on the information as accurate. *Id.*

¶ 19. Defendant argues that the affidavit of probable cause in this case did not meet the requirements of the "credibility" prong because there is no suggestion that the neighbor provided credible information in the past, that she was acting against her own

interest in giving the information, or that the police independently confirmed the accuracy of her specific statements to the point that it validated her information as a whole.

¶ 20. The State argues that the identification of the neighbor by name established her credibility, and that the smell of fresh marijuana through defendant's front door corroborated her statements.

¶ 21. We agree with the State that the fact that the informant in this case was named is a factor supporting the credibility of the information she provided, but conclude that that factor alone is not sufficient to satisfy the credibility prong. See *Arrington*, 2010 VT 87, ¶ 20 (recognizing that information provided by named informant is generally given more weight). But see *Chaplin*, 2012 VT 6, ¶ 13 (although factor in analysis, fact that informant is named to court and defendant, and gives affidavit under penalty of perjury, is not determinative of reliability irrespective of other factors).

■ ¶ 22. The neighbor's status as a named informant in combination with the circumstances surrounding her statements, however, are sufficient to establish the reliability of her information. We have previously held that "information about criminal or suspicious activity from a citizen, who is not a paid informant and is unconnected with the police, is presumed to be reliable." *State v. Riefenstahl*, 172 Vt. 597, 598, 779 A.2d 675, 677 (2001) (mem.). We have explained that the presumption "is founded on the notion that the typical citizen informant has no incentive to lie to the police, and is accountable for false reporting if the information proves untrue." *Goldberg*, 2005 VT 41, ¶ 15; see also 2 W. LaFave, Search and Seizure § 3.3, at 98 (4th ed. 2004) ("[C]ourts have quite properly drawn a distinction between [an informant] and the average citizen who by happenstance [is] in the position of a victim of or a witness to criminal conduct and thereafter relates to the police what [he or she] knows as a matter of civic duty."); *id.* § 3.4(a), at 225 ("[W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case."); *State v. Paszek*, 184 N.W.2d 836, 842-43 (Wis. 1971) (applying different rationale in assessing reliability of citizen-informers, who generally provide information with intent to aid law enforcement out of

concern for themselves or others, as opposed to typical informants, who generally provide information to police in exchange for some favorable treatment).

■ ¶ 23. We have limited the availability of this presumption to named citizen informants who "simply come forward in the interest of law enforcement" and have excluded from its reach individuals who provide information to the police in exchange for money or favorable treatment, or who have a pre-existing relationship with the police. *Goldberg*, 2005 VT 41, ¶ 16. Based on the information in the probable cause affidavit, the named neighbor did not provide information to the police in exchange for money, leniency, or any other benefit. Nor is there any indication that she had any preexisting relationship with law enforcement that could suggest a motive to lie. And there is no indication of any other special circumstances suggesting a motive to lie. The only evidence of her motive is her hearsay statement, reflected in the probable cause affidavit, that she was concerned for defendant's children. These circumstances are sufficient to satisfy the "credibility" prong of Rule 41(c). Accordingly, and given that defendant does not contest the factual basis underlying the hearsay statements from the neighbor, the trial court properly considered the hearsay statements of the named neighbor in evaluating the State's probable cause affidavit.

■ ¶ 24. Having concluded that the trial court properly considered both the odor of fresh marijuana outside the door and the statements of defendant's neighbor, we readily affirm the trial court's conclusion that the State had probable cause to obtain a search warrant, and its denial of defendant's suppression motion. The smell of fresh marijuana outside defendant's door, coupled with the next-door neighbor's statements that defendant admitted to selling marijuana and heroin out of his home, that every day a lot of unfamiliar people come and go from defendant's house at all times of day, and that people frequently knock on her door looking to buy marijuana or heroin because they mistake her residence for his, collectively constitute sufficient evidence of criminal activity, and grounds to conclude that evidence of the crime would be found in defendant's home, to support the search warrant. See *Guzman*, 2008 VT 116, ¶ 14 (unmistakable odor of marijuana may provide probable cause when linked to specific

person or persons by particular circumstances in which it is discovered or by other evidence at scene).

*Affirmed.*