*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0024p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                              *Plaintiff-Appellant,*

                                                              No. 08-4280

          *v.*

LYNA BROOKS,

                              *Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 07-00099-001—Ann Aldrich, District Judge.

Argued: January 12, 2010

Decided and Filed: February 5, 2010

Before: MARTIN, BOGGS, and WHITE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Daniel Steven Goodman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Edward G. Bryan, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Daniel Steven Goodman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Edward G. Bryan, Vanessa F. Malone, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellee.

          MARTIN, J., delivered the opinion of the court, in which BOGGS, J., joined. WHITE, J. (pp. 11-12), delivered a separate concurring opinion.

_____

**OPINION**

_____

          BOYCE F. MARTIN, JR., Circuit Judge. A federal grand jury indicted appellee Lyna Brooks for possession with the intent to distribute cocaine base (crack) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) after police executed a search warrant on his residence

1

and found, among other things, 136.21 grams of crack. Brooks moved to suppress the evidence on the grounds that the affidavit submitted in support of the application for the search warrant was insufficient to give rise to probable cause to search the residence. Specifically, Brooks argued that the majority of the information in the search warrant affidavit was stale and that what information was not stale was insufficient to give rise to probable cause to search the residence. The district court agreed and suppressed all of the evidence obtained from the search. The government appeals that ruling. Although we agree with the district court that much of the information set forth in the affidavit was stale, we find that the non-stale information was, on its own, sufficient to give rise to probable cause to believe that contraband or evidence of a crime would be present in Brooks's residence. We therefore **REVERSE** and **REMAND** for further proceedings.

**I.**

On the morning of October 10, 2006, two law enforcement officers, Lieutenant Rhoades and Patrolman Kilgore, were executing arrest warrants in connection with an operation of METRICH, a local joint drug task force in Richland County, Ohio. A state grand jury had indicted Brooks several months earlier for the state crime of Aggravated Drug Trafficking in Crack Cocaine. Rhoades and Kilgore thus sought out Brooks at his last known residence to serve the indictment and arrest him pursuant to a properly-issued arrest warrant. Brooks answered when the officers knocked on the door of the residence. The officers served Brooks with the indictment and placed him under arrest. The officers also smelled a strong odor of marijuana smoke wafting from the residence.

Brooks indicated that he needed to put on a pair of shoes before going to the police station with the officers. Lieutenant Rhoades accompanied Brooks to a bedroom so that he could retrieve his shoes. In the bedroom, Rhoades observed an ashtray that contained

marijuana seeds.[1] At some point during this process, the officers also conducted a pat-down search of Brooks and found $1,000 in cash in Brooks's back pocket.

At this point, most readers will assume they know what comes next—the officers immediately search the parts of the bedroom not in plain view, find more contraband, and then go get a search warrant. Surprisingly, and encouragingly, this is not the case. Instead, the officers took Brooks out of the residence and froze the scene. They then met with other METRICH officers and prepared an application for a warrant to search the residence. The key aspect of a search warrant application is the affidavit submitted to the magistrate to establish probable cause. The officers prepared the affidavit with the assistance of other members of the METRICH team, and Lieutenant Rhoades ultimately executed the affidavit. This is where Brooks says the problem arose.

The affidavit cannot be praised for its technical perfection.[2] It is clearly a cut-and-paste job. There is a second paragraph 9 *after* paragraphs 10 and 11, and paragraphs 10 and 11 are relics from an affidavit used for a completely different case. Although sloppiness may raise flags, it is not in any way fatal because search warrant affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Ventresca*, 380 U.S. 102, 108 (1965). What matters is the information contained in the affidavit. In this case, the material paragraphs are as follows:[3]

> 1. The affiant has been a police officer for over thirty four years with the Richland County Sheriff's Office and is presently assigned as a shift supervisor with road patrol

---

[1] At the suppression hearing and during oral argument on appeal, there were indications that the officers observed additional incriminating evidence in the bedroom, namely a set of scales and a "roach clip" used for smoking marijuana cigarettes. The officers also assert that Brooks admitted to smoking marijuana in the residence shortly before the officers arrived. However, for whatever reason, none of this information was included in the search warrant affidavit. As the question of whether there was probable cause turns solely on what information was provided to the magistrate in the search warrant affidavit, this additional information is irrelevant for our purposes. *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003). We thus omit it from the body of our factual recitation.

[2] The entire search warrant, including the affidavit, is attached as an exhibit to the government's primary brief on appeal.

[3] All errors and aberrant formatting appear in the original. The information replaced with "XXX" is either the name or identification number of a confidential informant.

2. On December 21, 2001, XXXXXXX contacted members of the METRICH Enforcement Unit and stated that Lyna Brooks, D.O.B. 05/30/76, S.S.N. xxx-xx-xxxx of 135 Vale Avenue, Mansfield, Richland County, Ohio, was trafficking in drugs.  RM47928.

3. On March 25, 2002, XXXXXXX contacted the METRICH Enforcement Unit and stated that Lyna Brooks of 135 Vale Avenue, Mansfield, Richland County, Ohio was trafficking in cocaine and crack cocaine.  RM 48249

4. On March 30, 2001, XXXXXXX contacted the METRICH Enforcement Unit and stated that Lyna Brooks was trafficking in crack cocaine.  RM46130

5. On July 8, 2005, XXXXXXX contacted the METRICH Enforcement Unit and stated that Lyna Brooks of 135 Vale Avenue, Mansfield, Richland County, Ohio is trafficking in crack cocaine.  RM 73153

6. On February 8, 2005, XXXXXXX contacted the METRICH Enforcement Unit and stated that drugs were being sold from the residence located at 135 Vale Avenue, Mansfield, Richland County, Ohio RM72005

7. On February 20, 2006, XXXXXX made a controlled drug buy of crack cocaine for the METRICH Enforcement Unit from Lyna Brooks.  The evidence was submitted to the Mansfield Police Department Crime Laboratory and tested positive for cocaine base.  MPD 5284-06

8. On February 21, 2006, XXXXXXXX made a controlled drug buy of crack cocaine for the METRICH Enforcement Unit from Lyna Brooks. The evidence was submitted to the Mansfield Police Department Crime Laboratory and tested positive for cocaine base.  MPD 5401-06

9. On October 10, 2006, the affiant, made contact with Lyna Brooks at his residence located at 135 Vale Avenue, Mansfield, Richland County, Ohio in reference to an Indictment for Aggravated Trafficking in Crack Cocaine.  Brooks was placed under arrest.  The odor of marihuana was strong in the residence.  When the affiant took Brooks into his bedroom to get shoes there were marihuana seeds located in the ashtray in plainview  Brooks stated this bedroom belonged to him and was on the first floor, south side of the house.  In Brooks rear hip pocket was $ 1,000 in United States currency.  Brooks refused a consent to search.

[paragraphs 10 and 11 are omitted]

9. [should be paragraph number 12]  In the past C.I. 00-28 has provided valuable information to the METRICH Enforcement Unit which has been independently corroborated and proven reliable.  C.I. 00-28 has also

made controlled purchases for the METRICH Enforcement Unit which
has resulted in the arrest and conviction of individuals on a variety of
violations of the Ohio Revised Code.

In summary, the affidavit sets up the affiant's qualifications in paragraph 1.
Then, in paragraphs 2 through 8, the affidavit describes a series of drug-related
interactions with confidential informants that range from five years to six months before
the date of the affidavit.  In the first paragraph 9, the affidavit discusses what the officers
observed that same day when they executed the arrest warrant on Brooks.  Paragraphs
10 and 11 are irrelevant because they were left over from a different case.  Finally, in the
second paragraph 9, the affidavit attempts to establish the credibility of at least one of
the confidential informants.

## II.

The sole issue is whether the information in the affidavit was sufficient to support
a magistrate's finding of probable cause to issue the search warrant.  Brooks essentially
argues that the information in paragraphs 2 through 8 is too stale to factor into the
probable cause determination and that the remaining information in the first paragraph
9 is insufficient on its own to establish probable cause.  The government responds by
arguing that although the information in paragraphs 2 through 8 is not itself sufficient
to establish probable cause, it is evidence of a pattern of criminal activity that
corroborates the same-day information in the first paragraph 9.  As for the first paragraph
9, the government contends that the information contained in that paragraph is, in and
of itself, sufficient to establish probable cause and is only strengthened by the
information in paragraphs 2 through 8.  Finally, the government contends that, even if
the affidavit was not sufficient to establish probable cause, the good-faith exception
articulated in *United States v. Leon*, 468 U.S. 897 (1984), nevertheless saves the search
from the exclusionary rule.

**A.     Legal Standards**

Whether a search warrant affidavit establishes probable cause to conduct the search is a legal question that this Court reviews de novo. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). In reviewing a magistrate's decision to issue a warrant, the Court must accord the magistrate's determination "great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc). On appeal of a district court's decision on a motion to suppress, although we must view the evidence "in a light most likely to support the decision of the district court," *Frazier*, 423 F.3d at 531 (citing *United States v. Heath*, 259 F.3d 522, 528 (6th Cir. 2001)), "when the district court itself is a reviewing court, . . . this court owes the district court's conclusions no particular deference." *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996). When determining whether an affidavit establishes probable cause, we look only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant. *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003).

To establish probable cause adequate to justify issuance of a search warrant, the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). Whether the affidavit gives rise to this fair probability "depends on the totality of the circumstances." *Frazier*, 423 F.3d at 531 (citing *Gates*, 462 U.S. at 230). "The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *Id.* (quoting *Gates*, 462 U.S. at 231).

When a warrant applicant seeks to search a specific location, the affidavit must establish "a nexus between the place to be searched and the evidence to be sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). "The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and

seized are located on the property to which entry is sought." *Frazier*, 423 F.3d at 532 (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

If the affidavit includes hearsay from a confidential informant, the reviewing court "must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information . . . ." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). "While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, . . . in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." *Frazier*, 423 F.3d at 532 (citations omitted).

Furthermore, in seeking to establish probable cause to obtain a search warrant, the affidavit may not employ "stale" information, and whether information is stale depends on the "inherent nature of the crime." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (quoting *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)). Whether information is stale in the context of a search warrant turns on several factors, such as "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Hammond*, 351 F.3d 765, 771-72 (6th Cir. 2006) (quoting *United States v. Greene*, 250 F.3d 471, 480-81 (6th Cir. 2001)). In the context of drug crimes, information goes stale very quickly "because drugs are usually sold and consumed in a prompt fashion." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009).

**B.      Analysis**

We believe that the analysis starts and ends with the information in the first paragraph 9, as that information easily satisfies all of the requirements of a proper search

warrant affidavit.[4]  It recounts Lieutenant Rhoades's first-hand observations of things in the residence the same day as the affidavit was executed.  Thus, the information clearly establishes the requisite nexus between the place to be searched and the evidence sought, and the information is unquestionably fresh.  This leaves only the question of whether the information in the first paragraph 9 gives rise to a fair probability that a search will uncover contraband or evidence of a crime.

On this question, Brooks and the district court focus on the relatively minor nature of what the officers observed—the odor of marijuana smoke and marijuana seeds in an ashtray.  The district court reasons that "[t]he odor of marijuana and the presence of marijuana seeds are, at best, evidence of a minor misdemeanor, for which Brooks could not be arrested under Ohio law." *United States v. Brooks*, No. 1:07-cr-99, 2008 U.S. Dist. LEXIS 65309, at *9 (N.D. Ohio Aug. 26, 2008) (citing O.R.C. 2925.11, which provides that possession of less than 100 grams of marijuana is a minor misdemeanor under Ohio law).  The court goes on to cite a 1984 case from the Southern District of Ohio, stating "this court does not find that 'such evidence of a single instance of past use, even in the immediate past, renders the continued presence of contraband reasonably probable.'" *Id.* (quoting *United States v. Elliott*, 576 F. Supp. 1579, 1582 (S.D. Ohio 1984)).

---

[4]As for the information contained in paragraphs 2 through 8, there is no question but that this information is stale for purposes of establishing probable cause in its own right.  All of the information is regarding drug transactions that took place, at the most recent, approximately six months prior to the date of the affidavit.  Given the mobile and quickly consumable nature of narcotics, evidence of drug sales or purchases loses its freshness extremely quickly. *See Frechette*, 583 F.3d at 378.

However, we do not understand the government to be arguing that the information in paragraphs 2 through 8 is "fresh" for purposes of establishing probable cause on its own, as the government has conceded that a magistrate could not have issued a warrant based on paragraphs 2 through 8 alone.  Instead, we understand the government to be arguing that the otherwise stale information is nevertheless relevant, and properly considered by the magistrate, to add flavor and force to the non-stale information.  This argument presents a different, and much closer, question—whether stale information is nevertheless properly considered by the magistrate for purposes of flavoring or strengthening other, non-stale information in an affidavit.  However, because we find that the information in the first paragraph 9 was sufficiently strong and reliable on its own to establish probable cause to search the residence, we need not determine whether the information in paragraphs 2 through 8 was relevant for establishing probable cause.  For this same reason, we also need not determine whether *Leon*'s good-faith exception applies in this case.

However, *Elliott* is materially distinguishable from this case and thus inapposite to our analysis.[5] Moreover, we believe that the district court misses the point when it focuses on whether the officers could have arrested Brooks based solely upon their observations. Probable cause to search a location is not dependent upon whether the officers already have probable cause or legal justification to make an arrest. The question is whether the information known by the affiant and conveyed to the magistrate makes it fairly probable that there will be additional contraband or evidence of a crime in the place to be searched. *Berry*, 565 F.3d at 338. The only way for that not to be true in this case—where there was evidence of marijuana use immediately prior to the officers' arrival and where it was clear that the house was Brooks's residence—is if the magistrate were required to assume that Brooks had just smoked his last bit of marijuana immediately before the officers arrived. We do not think that is a necessary assumption. Instead, we find it fairly probable under these facts that where there is smoke, there may be more there to smoke.[6] Furthermore, the police also found a large sum of cash, $1,000, in Brooks's pocket. Courts have readily acknowledged that large sums of cash

---

[5]In *Elliot*, acting on an anonymous tip, the officer searched two trash bags outside of the defendant's house. The officer found several partially smoked marijuana cigarettes and several marijuana stems, as well as mail and personal papers indicating that the garbage bags had come from the defendant. The district court found that the evidence from the garbage bags was insufficient to establish probable cause to search the house because the evidence only indicated minor past drug consumption and there was no indication as to how long the trash bag had been sitting on the curb. 576 F. Supp. at 1579-80. Under these facts, the *Elliott* court may well have been correct in invalidating the search because there was no way of knowing how much time elapsed between the smoking of the marijuana and placing the trash on the curb. However, *Elliott* should not be read to stand for the proposition that evidence of minor past drug consumption is, in all cases, insufficient to establish probable cause to search a location.

[6]The same logic does not necessarily apply to the seeds in the ashtray as, standing alone and without the corroboration of the smell of marijuana smoke, it is impossible to know how long the seeds had been in the ashtray. Accordingly, the mere presence of marijuana seeds in an ashtray would likely be insufficient to establish probable cause to search the residence due to the uncertainty of how long ago the seeds got there. Even then, however, we take note of the story told in Jim Stafford's down-home tribute to *Cannabis sativa*:

> All good things gotta come to an end,
> And it's the same with the wildwood weeds.
> One day this feller from Washington came by,
> And he spied 'em and turned white as a sheet.
> Well, they dug and they burned,
> And they burned and they dug,
> And they killed all our cute little weeds.
> Then they drove away,
> We just smiled and waved,
> Sittin' there on that sack of seeds!

JIM STAFFORD, WILDWOOD WEED (MGM 1974).

are indicative of the drug trade, *e.g.*, *United States v. Winder*, 557 F.3d 1129, 1138 (10th Cir. 2009) (citing cases stating that large sums of cash are commonly known to be tools of the drug trade), and in this case the indication is confirmed by the presence of the marijuana seeds and the odor of marijuana smoke. Accordingly, we believe that the information in the first paragraph 9, without regard to any other information in the affidavit, was sufficient to establish probable cause to search the residence for evidence of crime or for contraband.

### III.

For the reasons set forth above, we **REVERSE** the order of the district court suppressing the evidence seized from Brooks's residence and **REMAND** for further proceedings.

---

**CONCURRENCE**

---

WHITE, Circuit Judge (concurring).  I concur on the basis that the district court erred in rejecting the government's argument that without regard to the adequacy of the affidavit, the officers relied on the warrant in good faith, and the fruit of the search is thus admissible under *United States v. Leon*, 468 U.S. 897 (1984).

The good-faith exception is discussed in *United States v. Hython*, 443 F.3d 480, 484-85 (6th Cir. 2006):

> *United States v. Leon* modified the exclusionary rule so as not to bar from admission evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective."  468 U.S. 897, 905, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).  Where an officer's reliance on a warrant is objectively reasonable, the Supreme Court held, no additional deterrent effect will be achieved through the exclusion from evidence of the fruits of that search.  *See id*. at 922, 104 S. Ct. 3405.  However, the good-faith exception is inapposite in four situations: (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.  *See id.* at 923, 104 S. Ct. 3405.

> * * * The showing required to establish that reliance was "objectively reasonable" is less than the "substantial basis" showing required to establish probable cause. *See United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc).  "[I]t is entirely possible that an affidavit could be insufficient for probable cause but sufficient for good-faith reliance." *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004).

This court reviews *de novo* the district court's determination whether to apply the *Leon* good-faith exception.  *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005).

The district court concluded the exception does not apply here:

> because probable cause was not established and because Lt. Rhoades'
> affidavit did not include enough facts with respect to the nexus between
> the alleged criminal activity and the place to be searched, the affidavit is
> so lacking an "indica [*sic*] of probable cause as to render official belief
> in its existence entirely unreasonable." *United States v. Washington*, 380
> F.3d [236,] 241 [6th Cir. 2004].

This was error.  Here, there is no indication that the affiant provided false information to the magistrate.  Further, although much of the information was stale, the search warrant provided specifics and was not "bare bones."  Nor, in light of paragraph 9, was it so deficient on its face as to render unreasonable the officers' belief in its authority.