RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0120p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

*v.*

> No. 15-5362

DAVID DEWAYNE CHURCH, JR.,

> *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:13-cr-00067—Todd J. Campbell, Chief District Judge.

Argued: December 10, 2015

Decided and Filed: May 17, 2016

Before: GRIFFIN and KETHLEDGE, Circuit Judges; CLELAND, District Judge.[*]

---

### COUNSEL

**ARGUED:** Michael C. Holley, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Philip H. Wehby, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee. **ON BRIEF:** Michael C. Holley, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Philip H. Wehby, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

KETHLEDGE, J., delivered the opinion of the court in which CLELAND, D.J., joined, and GRIFFIN, J., joined in the result. GRIFFIN, J. (pp. 8–18), delivered a separate opinion concurring in the judgment.

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————

**OPINION**

———————

KETHLEDGE, Circuit Judge.   Search warrants target places, not people.   David Church opened his home to police and showed them that he had marijuana inside.   Police received a warrant to search the home for drugs.   Church was later charged with drug distribution, and moved to suppress evidence gathered in that search on the theory that police had cause to suspect Church only of using drugs, not selling them.   The district court denied Church's motion, and Church pled guilty.   We affirm.

I.

In August 2012 Nashville police detectives Jeff Moseley and Daniel Bowling went to David Church's home to serve him with a warrant for violating his probation.   Church arrived at his home shortly thereafter, carrying a bag of fast food.   After Moseley and Bowling established Church's identity, they placed Church under arrest in his driveway.   Church asked that he be allowed into the house to eat his food and call his girlfriend; Moseley and Bowling obliged, and accompanied Church inside with his consent.   The detectives told Church that they smelled burnt marijuana in the house, and Church admitted that he had recently smoked marijuana.   He proceeded to lead Bowling upstairs to show Bowling a marijuana blunt.   Church then called his girlfriend, who came to the house and told police that, despite her efforts to get him to stop, Church regularly smoked marijuana at the house.

Moseley left the house to prepare a search-warrant affidavit while Bowling stayed with Church and Church's girlfriend.   In his affidavit, Moseley recounted the detectives' visit to the house and their conversations with Church and his girlfriend.   He swore that there was "probable and reasonable cause to believe that [Church's house] is/are now in possession of certain evidence of a crime, to wit:  violations of one or more of the following state laws as set forth in TCA Sections 39-12-204 [RICO], 39-14-903 [Money Laundering], and 39-17-417 [Tennessee Drug Control Act of 1989]," and he requested a warrant to search Church's house for "controlled substances, [and] controlled substances paraphernalia," among other things.   A state magistrate

issued a search warrant based on Moseley's affidavit.  The police executed the warrant that afternoon.  In an upstairs closet, they found 4.8 grams of marijuana and 8 dilaudid (hydromorphone) pills, along with a safe.  The police asked Church for the code to the safe.  Church refused to provide it, so police used a prying ram to break in.  The safe contained 800 dilaudid pills, a Smith & Wesson .40-caliber handgun, and a box of ammunition.

Church thereafter sought to suppress the evidence collected by the government during the search.  The district court denied his motion.  Church later pled guilty to possession with intent to distribute hydromorphone and to being a felon in possession of a firearm.  The district court sentenced Church to 170 months' imprisonment.  He appeals the district court's denial of his motion to suppress.

II.

A.

Church argues that the warrant to search his home was defective because it was issued pursuant to an affidavit that established probable cause for the wrong crime.  He contends that "a search warrant is plainly defective if it, based on a showing of probable cause of crime X, authorizes a search for proof of crime Y."  Church Br. at 2.  Specifically, he argues that the search warrant issued here authorized a search for evidence of drug possession with intent to distribute, whereas Moseley's affidavit showed probable cause to search only for evidence of simple possession.  We review deferentially the magistrate's decision to issue a search warrant, and may second-guess that decision only where the magistrate exercised his authority "arbitrarily."  *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013).

The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The amendment's text makes clear that "[s]earch warrants are not directed at persons; they authorize the search of 'places' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized."  *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978).  It follows that the "critical element in a reasonable search is not that the owner of the property is

suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Id.* at 556.

Thus, to establish probable cause for a search, an affidavit must show a likelihood of two things:  first, that the items sought are "seizable by virtue of being connected with criminal activity"; and second, "that the items will be found in the place to be searched." *Id.* at 556 n.6. The nexus between "criminal activity" and the item to be seized is "automatic[]" when the object of the search is "contraband." *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967); *see also* Black's Law Dictionary 365 (9th ed. 2009) (defining "contraband" as "[g]oods that are unlawful to import, export, produce, or possess").  Marijuana is contraband because its possession and production is prohibited under federal law and the criminal laws of most states, including Tennessee's. *See* 21 U.S.C. §§ 841, 844; Tenn. Code Ann. §§ 39-17-417, 39-17-418.

A police request to search for illegal drugs therefore needs to satisfy only the second showing for a valid warrant:  "a fair probability" that the drugs "will be found in a particular place." *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).  That standard is met where, for example, the affiant swears that he has seen marijuana seeds and smelled marijuana smoke inside the house to be searched. *See United States v. Brooks*, 594 F.3d 488, 494 (6th Cir. 2010); *see also United States v. Foster,* 376 F.3d 577, 588 (6th Cir. 2004).

Moseley's affidavit established that detectives had entered Church's house and smelled marijuana, that Church showed the detectives a marijuana blunt upstairs, and that Church's girlfriend thereafter confirmed that Church regularly smoked marijuana in the house.  Thus, there was an outright certainty, not just a "fair probability," that the house contained illegal drugs.  The police got a warrant to search for illegal drugs in Moseley's house, and they searched for drugs in places where drugs might normally be hidden.  Hence the search was lawful.

Church contends that the search was unlawful because Moseley specified in the affidavit that the police were looking for evidence of drug distribution in violation of Tennessee Code § 39-17-417, whereas they had probable cause to search only for evidence of simple drug possession in violation of Tennessee Code § 39-17-418.  But drugs are contraband, and the police have a right to seize them, pursuant to a search warrant, wherever they are likely to be

present. For purposes of this warrant, therefore, it did not matter whether the police suspected that Church possessed marijuana, dealt marijuana, or committed some other crime. *See Zurcher*, 436 U.S. at 555-56. What mattered was that there was a "fair probability" that marijuana was in the house. *United States v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009). Moseley's affidavit left no doubt of that probability.

There was no such probability in *United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008), which is the case that Church relies on here. That case concerned a warrant that authorized the police to search for child pornography in the home of a suspected child molester. The court held that evidence of child molestation, by itself, did not give cause to believe that the police would find the contraband specified in the warrant—namely, child pornography—in the molester's home. *See Hodson*, 543 F.3d at 293. In this case, in contrast, a detective requested a warrant to search for contraband in a place where the detective had already seen it. The facts here are analogous not to *Hodson*, but to a case where the police stumble upon child pornography in a home, and then ask a magistrate for a warrant to search the home for child pornography. The difference between this case and *Hodson*, therefore, is simply that in this case the affidavit established probable cause.

B.

Church also argues that Moseley's affidavit failed to establish probable cause because its contents were "stale." Church did not make this argument in the district court, so we review only for plain error. *See United States v. Soto*, 794 F.3d 635, 650 n.11 (6th Cir. 2015).

To show probable cause that contraband is where an officer's affidavit says it is, the affidavit must contain statements of fact "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States*, 287 U.S. 206, 210 (1932). Because contraband is often moved from place to place, information about its whereabouts can grow stale over time. Whether an affidavit's information is stale enough to preclude a showing of probable cause depends on the facts alleged in the affidavit. *See United States v. Spikes*, 158 F.3d 913, 923-24 (6th Cir. 1998). Thus, for instance, where an affiant swears that marijuana "is now" on certain premises, and there is no indication that the

information is otherwise stale, the affidavit shows probable cause that the marijuana is where the affidavit says it is. *See United States v. Smith*, 783 F.2d 648, 652 (6th Cir. 1986). Likewise, where an affidavit indicates that someone keeps "a ready supply of heroin" in his apartment, the phrase "ready supply" shows that heroin is likely there now. *See United States v. Williams*, 351 F.2d 475, 476 (6th Cir. 1965).

Here, Detective Moseley's affidavit provided every reason for the magistrate to think there were drugs in the house at the time the warrant was issued. Moseley said that "David Church uses this address," that Church told the detectives that "he smokes marijuana in the house," and that Church's girlfriend said that "Church does smoke marijuana in the residence and . . . she has told him not to do so in the past." That reference to "the past" would make little sense unless Detective Moseley was describing events in the present tense. The affidavit therefore showed that Moseley was acting on fresh information.

Church contends that the affidavit is stale because Moseley did not recite the date on which he was inside Church's house. But what counts is the affidavit's content, not its "technical perfection." *Brooks*, 594 F.3d at 490. And here Moseley's affidavit made clear that it was not stale.

C.

Finally, Church argues that the police acted unreasonably, in violation of the Fourth Amendment, when they used a prying ram to open Church's safe, thereby destroying it. We review that argument de novo. *See United States v. Winters*, 782 F.3d 289, 295 (6th Cir. 2015).

Obviously the police had the right to open the safe. "[A] warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found." *United States v. Ross*, 456 U.S. 798, 821 (1982). And "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979). For example, if a home's occupant refuses to admit an officer after he announces his authority and purpose, the officer may lawfully break open the door. *See* 18 U.S.C. § 3109; *United States v. Ciammitti*, 720 F.2d 927, 932-34 (6th Cir. 1983).

Here, the police did not break open the safe capriciously:  they had probable cause to believe there might be drugs inside; Church refused to provide the safe's combination; and thus the police had no choice but to open it by force.  The district court was right to hold that the police acted reasonably when they did so.

The district court's judgment is affirmed.

---

**CONCURRING IN THE JUDGMENT**

---

GRIFFIN, Circuit Judge, concurring in the judgment.   This appeal of the denial of defendant's motion to suppress raises troubling issues regarding the Nashville Police Department's use of overreaching boilerplate affidavits for requesting search warrants.   In this case, the Department secured a warrant to broadly search defendant's home for evidence of racketeering, money laundering, and drug trafficking based solely on defendant's possession of a small quantity of marijuana.   Although I question the validity of the overbroad affidavit in cases like this, I would affirm the district court's denial of defendant's motion to suppress under the *Leon*[1] good-faith exception because a reasonably well-trained officer would not have known that the warrant lacked probable cause to search for evidence of drug trafficking.

I.

On August 31, 2012, Detectives Jeff Moseley and Daniel Bowling of the Metropolitan Nashville Police Department arrested defendant David Church, Jr. for failure to report to his probation officer.   Inside Church's residence, the detectives smelled burnt marijuana.   Church admitted that he had smoked marijuana that morning and showed Detective Bowling a single, burnt marijuana blunt.   When Church's girlfriend arrived, she stated that Church smokes marijuana in the residence against her wishes.   Church does not challenge the admission of this evidence.

After Church refused consent to a search of the residence, Detective Moseley prepared an affidavit for a search warrant using a pre-printed form.   The boilerplate language at the top of the affidavit states:

> [T]here is probable and reasonable cause to believe that [Church's residence is] in possession of certain evidence of a crime, to wit:  violations of one or more of the following state laws as set forth in TCA Sections 39-12-204 [RICO], 39-14-903 [Money Laundering], and 39-17-417 [Tennessee Drug Control Act of 1989], and the evidence to be searched for is as follows:   All controlled substances,

---

[1]*United States v. Leon*, 468 U.S. 867 (1984).

controlled substances paraphernalia, scales and mixing devices, packaging materials, any equipment, devices, records, computers and computer storage discs, to include the seizure of computers to retrieve such records, books or documents adapted and used for the purpose of producing, packaging, dispensing, delivering or obtaining controlled substances, or recording transactions involving controlled substances, any indicia [of] ownership, dominion, or control over the premises to be searched including rental receipts, mortgage payments, utility bills, photographs of any persons involved in the criminal conduct, all financial records pertaining to the disposition of the proceeds of the violation of the criminal laws specified above, and any goods or personal property, including US currency or negotiable instruments, constituting proceeds of a violation of the aforesaid laws or funds used to facilitate the same[,] firearms, including handguns, pistols, revolvers, shotguns, rifles, machine guns, and other weapons, and any evidence or items which would be used to conceal the for[e]going or prevent its discovery.

Affidavit, R. 36-6, ID 84 (final three alterations added). In the section titled "Statement of Facts In Support of Probable Cause," Detective Moseley inserted the following three paragraphs:

I, your affiant, and [Metropolitan Nashville Police Department] Gang Unit Det. Bowling went to 3219 Priest Woods Drive in an attempt to serve an outstanding felony warrant[2] on David Church m/b DOB: 1/15/1985. David Church uses this address as his own address on his TN driver's license. Det. Bowling and I observed David Church drive up to the house and park his car on Priest Woods Drive in front of the home. Det. Bowling and I were able to take David Church into custody as he was on the sidewalk approaching the front door of this residence. David Church gave police a false name and stated that he was not David Church, but later admitted his real identity.

David Church had Krystal's food in his hands as he was taken into custody, and asked if he could please go in his house to eat his food and call his girlfriend before he went to jail. Det. Bowling and I let David Church into this residence using a key found on Church's key ring. David Church was allowed to sit on the couch in the first room to eat and call his girlfriend, and while doing so, Det. Bowling and I detected a strong odor of marijuana coming from the residence. Church admitted that he smokes marijuana in the house and showed Det. Bowling where his marijuana blunt was in the upstairs bedroom. Church stated that he did not want police to search the house and stated that the house is in his girlfriend's name, but that he does live there. David Church and I called his girlfriend, Shanna Boyd, who stated that she would come home. I greeted Ms. Boyd outside and she stated that she did not want police to search her residence. She stated that Church does smoke marijuana in the residence and stated that she has told him not to do so in the past.

---

[2]The warrant was for Church's failure to contact his probation officer. The affidavit does not indicate that the underlying offense resulting in probation involved drug trafficking.

> Due to the odor of marijuana, along with both subjects' admissions and the evidence of drugs in the location, your affiant wishes to search the premises of 3219 Priest Woods Drive Nashville, TN 37214 and each person occupying said premises and both vehicles that each subject drove to the house in. In your affiant's training and experience persons at locations where drugs are sold or used many times conceal or secrete illicit items on their person to conceal them from police detection. Your affiant has also learned in training and experience that many times subjects at locations involved in illicit drug activity are also in possession of weapons and or have outstanding warrants for their arrest.

*Id.* at 84−85. Also in the affidavit was a pre-printed section titled, "Experience and Basis of Knowledge of Affiant," which details Detective Moseley's experience with "narcotics trafficking" and "drug dealers," including twelve "habits, characteristics, and practices of drug traffickers and their organizations." Nothing in that section draws a relationship between simple possession and drug trafficking. Nor is the section unique to Detective Moseley's experience and knowledge given its pre-printed and generic nature.

A state court judge authorized the search warrant about two hours after Church's arrest. Seven officers executed the warrant. The search uncovered a single Dilaudid (hydromorphone) pill in the living room, 4.8 grams (.169 oz.) of marijuana in a closet, and a locked safe. The officers discovered that a key on Church's key ring fit the safe door, but the safe also required a passcode. When asked for the passcode, Church said he did not know it because the safe came with the house. The officers pried the safe open. Inside, they discovered a loaded .40 caliber handgun with a box of ammunition of .40 caliber rounds and 800 Dilaudid pills. Church does not contest that the handgun and pills were his.

A federal grand jury indicted Church for (1) possession of a firearm as a felon, (2) possession with intent to distribute hydromorphone, and (3) possession of a firearm in furtherance of drug trafficking. Church moved to suppress the fruits of the search on several grounds, including that the warrant did not establish probable cause for racketeering, money laundering, or drug trafficking, and the officers violated the Fourth Amendment by unreasonably destroying the safe.

The district court held a suppression hearing and ruled from the bench:

> The next issue I want to address is in terms of one aspect of the probable cause. There clearly wasn't probable cause to believe there was a RICO violation or money laundering in this case. And to the extent that the supporting affidavit and search warrant deal with RICO or money laundering, there is absolutely no probable cause whatsoever to believe there was a RICO violation or money laundering involved. And to the extent that the state court keeps issuing boilerplate search warrants with those issues, they are out of line. They are wrong, and it really needs to stop. There is not a basis to believe that there is a RICO violation or money laundering in this case.

Nevertheless, with respect to probable cause for drug trafficking, the district judge stated:

> And so the issue is whether [there was] probable cause for the issuance of the warrant based on the smell with the blunt that was found and the admissions of having smoked marijuana that day and having smoked marijuana in the house in the past. I am finding that there is probable cause based on that to issue the search warrant under a violation of the Tennessee Drug Control Act of 1989, as well as Tennessee Code 39-17-417. I might add that the Tennessee Drug Control Act controls all of Part 4, Title 39. For instance, the heading of 39-17-401 is headed Tennessee Drug Control Act, and the Drug Control Act is not limited to Section 417. But in any event, possession, use and admissions of such and smell of marijuana is sufficient to support probable cause for a warrant under Section 417.

> The heart of the defendant's argument is [*United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008) and] that in this instance the argument is that there is only evidence to support a possession charge, probable cause of that and not for trafficking. The *Hodson* case dealt with child molestation versus child pornography. Here all of the conduct qualifies under the Tennessee Drug Control Act, so that is distinguishable on that basis.

The court therefore denied Church's motion to suppress without reaching the government's alternative, good-faith exception argument.

Church conditionally pleaded guilty to Count One, possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924, and Count Two, possession with intent to distribute hydromorphone, in violation of 21 U.S.C. § 841(a)(1). On appeal, Church challenges the district court's denial of his motion to suppress.

II.

Church's primary argument is that the warrant was invalid because the affidavit did not establish probable cause to search for evidence of the crime of drug trafficking, as opposed to simple possession.  We review the district court's findings of fact for clear error and conclusions of law de novo.  *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009).  "Whether a search warrant affidavit establishes probable cause to conduct the search is a legal question that this Court reviews de novo."  *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010).

A.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  "To establish probable cause adequate to justify issuance of a search warrant, the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes a 'fair probability that contraband or evidence of a crime will be found in a particular place.'"  *Brooks*, 594 F.3d at 492 (quoting *Berry*, 565 F.3d at 338).  "Whether the affidavit gives rise to this fair probability depends on the totality of the circumstances."  *Id.* (internal quotation marks omitted).  "When a warrant applicant seeks to search a specific location, the affidavit must establish a 'nexus between the place to be searched and the evidence to be sought.'"  *Id.* (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)).  "The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought."  *Id.* (citation omitted).  The judicial officer issuing such a warrant must "be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant."  *Whiteley v. Warden*, 401 U.S. 560, 564 (1971).  "Mere affirmance of belief or suspicion is not enough."  *Nathanson v. United States*, 290 U.S. 41, 47 (1933).  Our review of the sufficiency of the evidence supporting probable cause is limited to the four corners of the affidavit.  *United States v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013).

The affidavit in this case raises serious concerns about whether probable cause existed to search Church's residence for evidence of drug trafficking, as opposed to mere possession. Overbroad warrants can run afoul of the Fourth Amendment's guarantees as they can authorize carte blanche access to search for *any* evidence of *any* criminal activity. *See United States v. Hodson*, 543 F.3d 286, 291−93 (6th Cir. 2008) (probable cause to search for evidence of one crime is not probable cause to search for evidence of a different crime). In this case, we learn that the Nashville Police Department apparently uses, and Tennessee magistrates apparently accept, boilerplate affidavits authorizing broad searches for evidence of racketeering, money laundering, and drug trafficking on mere evidence of possession of small quantities of marijuana. Such use and acceptance—without specific facts linking drug possession to those crimes—is troubling. Indeed, as the district court rightly observed, such overreaching is "out of line . . . and it really needs to stop."

Despite my concerns, I would not reach the question of whether probable cause existed here because I would resolve this case under the *Leon* good-faith exception to the exclusionary rule. When a search violates the Fourth Amendment, the fruits of the search are ordinarily inadmissible under the exclusionary rule, "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *United States v. Calandra*, 414 U.S. 338, 348 (1974); *see Mapp v. Ohio*, 367 U.S. 643, 654−55 (1961). The "good-faith exception applies when a warrant issued by a neutral and detached magistrate is discovered, after the search, to have been nonetheless invalid—and, hence, the search unlawful—yet the officer conducting the search acted in objectively reasonable reliance on that warrant." *Hodson*, 543 F.3d at 293 (internal quotation marks and brackets omitted). In establishing the good-faith exception, the Supreme Court "based its refusal to suppress evidence in such situations on its conclusion that 'the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.'" *Id.* (quoting *United States v. Leon*, 468 U.S. 867, 922 (1984)). However, the Court stated that suppression remains appropriate if:

(1) the magistrate was "misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;"
(2) the magistrate "abandoned his judicial role" or neutrality;
(3) the warrant was "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable; or
(4) the warrant was so "facially deficient" that it could not reasonably be presumed valid.

*Leon*, 468 U.S. at 923.

In this case, Church argues that the warrant fails under the third exception: it was so lacking in indicia of probable cause that the officers' belief in its existence was unreasonable. "Under this exception, the executing officer must have had 'no reasonable grounds for believing that the warrant was properly issued.'" *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003). "[T]he objective reasonableness determination does not examine the subjective states of mind of the particular law enforcement officers conducting this particular search, rather it inquires 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision.'" *Leon*, 468 U.S. at 923 n.23.

Church relies on *Hodson*, in which we held that the good-faith exception was inapplicable because a "reasonably well trained officer" would have realized that there is a difference between the crimes of child molestation and possession of child pornography. 543 F.3d at 293. In this case, however, there is a closer relationship between the crimes of marijuana possession and marijuana trafficking than child molestation and possession of child pornography. The distinction between possession and trafficking under Tennessee law is simply the amount of marijuana possessed.[3] And a warrant to search for evidence of possession authorizes a search for contraband such as drugs and drug paraphernalia, which would also be encompassed in a warrant to search for evidence of drug trafficking. Here, there is undisputed evidence of drug activity inside Church's residence, including a recently smoked marijuana blunt

---

[3]In Tennessee, simple possession and drug trafficking are two separate crimes. Tennessee Code Annotated § 39-17-417 prohibits the knowing manufacture, delivery, or sale of a controlled substances. Tenn. Code Ann. § 39-17-417(a). It also prohibits the possession of a controlled substance with the "intent to manufacture, deliver or sell" the controlled substance. *Id.* § 39-17-417(a)(4). By contrast, § 39-17-418 makes it a crime to "knowingly possess or casually exchange a controlled substance" unless obtained pursuant to a valid prescription. *Id.* § 418(a). The dividing line between the two crimes with respect to possession is one-half ounce or 14.175 grams. *Compare* Tenn. Code Ann. § 39-17-417(a), (g) (drug trafficking) *with* Tenn. Code Ann. § 39-17-418 ("simple possession"); *see also State v. Englet*, No. W1999-283-CCA-R3-CD, 2000 WL 556479, at *1 (Tenn. Crim. App. May 8, 2000) (distinguishing the two crimes).

observed by the officers and admission by Church's girlfriend that Church smokes in the residence.  Moreover, in factually similar cases, we have upheld searches for evidence of drug trafficking under the good-faith exception.  *See United States v. Hollin*, 459 F. App'x 535, 539−40 (6th Cir. 2012) (observing that presence of "marijuana roaches offered a factual basis to believe the Apartment contained contraband" and concluding that even if "probable cause was ultimately lacking, it is unlikely that a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision.") (internal quotation marks omitted); *see also Brooks*, 594 F.3d at 495−96 (White, J., concurring) (fruit of the search admissible under good-faith exception where there were marijuana seeds in plain view and defendant had $1,000 in cash in his pocket).  Thus, although this is a close case, I cannot conclude that a reasonably well-trained officer would have known the search was illegal despite the magistrate's decision to issue the search warrant for drug trafficking.

## B.

Church next argues that the evidence should be suppressed because the warrant was stale.  Because Church did not raise this argument below, we review for plain error.  *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015).  The burden is on Church "to show (1) error that (2) was plain, (3) affected [his] substantial rights, and (4) seriously affected the fairness, integrity, or public reputation of the judicial proceedings."  *United States v. Ushery*, 785 F.3d 210, 218 (6th Cir. 2015).

"The probable cause inquiry gauges the likelihood that evidence of a crime may presently be found at a certain location.  A warrant must be supported by 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause *at that time*.'"  *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006) (quoting *Sgro v. United States*, 187 U.S. 206, 210 (1932)).  "The expiration of probable cause is determined by the circumstances of each case, and depends on the inherent nature of the crime."  *Id.* (citations omitted).  "Relevant variables include the 'character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?)."  *Id.* (quoting *United States v. Spikes*, 158 F.3d 913,

923 (6th Cir. 1998)). Whether an affidavit is so stale that it fails to show probable cause to support a search warrant is determined by the circumstances of each case, not by rigid rules. *See Spikes*, 158 F.3d at 923−24.

In *United States v. Hython*, our court held that a warrant based on an undated controlled buy of cocaine was invalid on staleness grounds. 443 F.3d at 485−87. Neither the warrant nor the supporting affidavit specified the date of a controlled buy, and neither document supported that the residence was a secure operational base of an ongoing drug enterprise. *Id.* at 487. We also held the good-faith exception was inapplicable because an affidavit with an undated controlled buy and "no indication of ongoing investigation, subsequent or previous controlled buys, or further surveillance of the address . . . [was] patently insufficient. No well-trained officer could have reasonably relied on a warrant issued on the basis of [such an] affidavit." *Id.* at 488−89.

Church argues that the warrant is defective because Detective Moseley failed to date the events in the affidavit. But a specific date is not always required. Rather, the information in an affidavit must "clearly rebut[] any inference of staleness of information or lack of specificity of the affidavit." *United States v. Williams*, 480 F.2d 1204, 1205 (6th Cir. 1973) (per curiam); *see Hython*, 443 F.3d at 486−87 (citing *Williams*). For instance, where an affidavit says that marijuana "is now" on certain premises, and there is no indication that the information is otherwise stale, the affidavit shows probable cause that the marijuana is where the affidavit says it is. *See United States v. Smith*, 783 F.2d 648, 652 (6th Cir. 1986). Likewise, where an affidavit indicates that someone keeps "a ready supply" of controlled substances in his apartment, the phrase "ready supply" sufficiently communicates that there is a continuing presence of the controlled substance in the apartment. *See United States v. Williams*, 351 F.2d 475, 476−78 (6th Cir. 1965).

In this case, Detective Moseley's affidavit provided some reason for the magistrate to understand that there were drugs in the house at the time the warrant was issued. For instance, the affidavit recited that "David Church uses this address," "he does live there," and that Church told police that "he smokes marijuana in the house." It also said that Church's girlfriend told police that "Church does smoke marijuana in the residence and . . . she has told him not to do so

in the past." The reference to "the past" would make little sense unless Detective Moseley was describing events in the present tense. A magistrate reading the affidavit would thus understand that Detective Moseley was acting on fresh information. Detective Moseley's affidavit is not a model one. But Church's argument that Detective Moseley "simply forgot to put specific dates in his affidavit," *United States v. Thomas*, 973 F.2d 1152, 1157 (5th Cir. 1992), is not fatal to the warrant's validity, at least under plain error review.

C.

Church's final claim of error is that the execution of the search was unreasonable. Specifically, he maintains that the executing officers violated the Fourth Amendment by destroying the safe containing the Dilaudid pills and handgun because the officers could have contacted the safe manufacturer, rather than prying the safe open. If the warrant is valid, Church does not dispute that the officers were authorized to search in the safe, but merely that destruction of the safe was unreasonable. The district court found, under all the facts and circumstances, that it was "reasonable to search the safe and necessary to break into it to search it." We review de novo. *United States v. Bates*, 84 F.3d 790, 794 (6th Cir. 1996).

We apply a "reasonableness" standard to determine whether destruction of property was "reasonably necessary to effectively execute a search warrant." *Hill v. McIntyre*, 884 F.2d 271, 278 (6th Cir. 1989) (citation omitted); *see also United States v. Ramirez*, 523 U.S. 65, 71 (1998) ("The general touchstone of reasonableness, which governs Fourth Amendment analysis, governs the method of execution of the warrant. Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression.") (internal citation omitted). Nevertheless, "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979); *see also United States v. Whisnant*, 391 F. App'x 426, 430 (6th Cir. 2010) (collecting cases).

The government argues the safe, and things likely to be stored in a safe, were within the scope of the search warrant. "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that

separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820 (1982). "[A]lthough a warrant to search for a stolen vehicle would not justify opening a small wall safe in a bedroom closet, judicial authorization to search a home for contraband drugs, money associated with drug trafficking, and drug paraphernalia would clearly justify the opening of doors, closets, drawers, safes, and other places where the listed items could be hidden." *United States v. Lengen*, 245 F. App'x 426, 434 (6th Cir. 2007). The government is thus correct that guns and drugs, which are small enough to fit inside the safe and were in fact found in the safe, were within the scope of the warrant. That the officers could have contacted the manufacturer to open the safe without destroying it does not render opening of the safe objectively unreasonable. Church cites no factually similar cases holding that, where alternatives are available, the forcible opening of a container renders the search unconstitutional. The district court did not err.

III.

For these reasons, I concur in the judgment affirming the district court's denial of Church's motion to suppress.